632 P.2d 663

**The STATE of Idaho,
Plaintiff-Respondent,**

v.

**Russell MEE, Defendant-Appellant.**

No. 12879.

Supreme Court of Idaho.

July 21, 1981.

Peter D. McDermott of McDermott & McDermott, Pocatello, for defendant-appellant.

David H. Leroy, Atty. Gen., Lynn E. Thomas, Deputy Atty. Gen., Boise, for plaintiff-respondent.

McFADDEN, Justice.

This appeal stems from a conviction of second degree burglary entered February 1, 1978 upon a guilty verdict by the jury. Faced here with a single, yet difficult, question concerning the propriety of admission of the prior preliminary hearing testimony of a witness, we reverse.

Appellant was accused of entering the Pocatello residence of Breen and Vaughn and removing Breen's multiple component stereo system on the night of December 3, 1977. Appellant had earlier that day borrowed Vaughn's car, in the process receiving the house keys as well as those to the car.

At the preliminary hearing, a friend of appellant's, Brenda Priest, testified. According to Ms. Priest, appellant met her at a service station that night and asked her if she could store a stereo system for him at her residence, to which she agreed. Later that evening, appellant delivered the equipment and Priest and appellant unloaded the components from the rear seat of Vaughn's car.

Breen returned home around 1:00 a. m., December 4, and found his stereo system missing; there were no signs of forced entry. Several days later Ms. Priest mentioned in a conversation that she was storing stereo equipment for a friend. Following comments concerning the earlier theft of Breen's equipment, Ms. Priest and others inspected the components at her house and found them to be Breen's (he had previously marked the components with his initials and recorded the serial numbers). The police were called and the equipment was impounded. Appellant was subsequently arrested and charged with the theft.

The state's case is admittedly circumstantial and Ms. Priest's testimony is unalterably the primary component of that case. Ms. Priest testified to the above facts at the preliminary hearing held December 14, 1977 following a grant of immunity given to her the preceding day.

The issue presented here stems from the fact that Ms. Priest refused to testify at trial. Ms. Priest steadfastly refused to speak in light of all reasonable effort on the part of the court and counsel to procure her testimony. It appears that Ms. Priest was fully informed of her rights stemming from the granted immunity, as well as of possible consequences should she maintain her stance against testifying before the jury. Counsel was made available to her to aid in her decision. Following failure of these efforts to secure Ms. Priest's testimony, the court ordered preparation of a transcript of her preliminary hearing testimony. Defense counsel at that point registered his objection to such an order, relying specifically on the prohibition of such use set forth in *State v. Villarreal*, 94 Idaho 246, 486 P.2d 257 (1971).

Upon resumption of the trial the following day, but outside the presence of the jury, Ms. Priest was called to the stand once again and questioned as to her preliminary hearing testimony. She noted that she had "told the truth" at that time, but refused to either reaffirm that testimony or testify anew for the district court. After argument by counsel, the court allowed the pre-

liminary hearing transcript to be read to the jury over defense objection. Appellant was subsequently found guilty of the charge of second degree burglary.

The single issue presented is whether the trial court erred in allowing the use of the preliminary hearing testimony of a witness who was present at trial but refused to testify.

Appellant contends that the use of Ms. Priest's preliminary hearing testimony was foreclosed by *State v. Villarreal, supra,* and its predecessor case, *State v. Potter,* 6 Idaho 584, 57 P. 431 (1899), overruling *Territory v. Evans,* 2 Idaho 651, 23 P. 232 (1890). We agree.

In *Evans,* the territorial supreme court held that testimony given at a preliminary hearing (at that time called "preliminary examinations") in the presence of the defendant and subject to cross-examination was admissible at later trial upon the absence or death of the testifying witness. The court found such use sanctioned by the common law and not violative of the confrontation clause of the federal constitution.

At trial in *Potter,* the depositions of two absent witnesses were introduced into evidence. A review of the statements of the court in *Potter,* as well as of the records on file with this court concerning that case, indicates clearly that the "depositions" involved were actually the transcripts of the testimony given at the defendant's preliminary examination before the committing magistrate. These documents further show that the defendant was present, was represented by counsel, and had the opportunity to cross examine the witnesses at the preliminary examination.[1] Thus under the rule of *Territory v. Evans, supra,* this testimony was admissible.

The defendant in *Potter,* however, appealed on the ground that admission of these absent witnesses' depositions, as well as the use of his own preliminary hearing deposition for impeachment, was improper since the presiding magistrate failed to "certify" those documents prior to their use at trial as required under the applicable statute.[2] The trial court allowed the justice of the peace acting as the committing magistrate (who appeared and testified at trial) to add antedated certificates to the depositions with operation *nunc pro tunc.* The supreme court "questioned" this procedure, yet did not actually rule on the propriety of admission of the depositions in light of the formal defect.[3]

*Sua sponte,* the court raised an additional objection to the use of the preliminary hearing depositions, i. e., whether they were admissible at all. The court, in reviewing the Idaho statutes, found no explicit reference to the use by the state of depositions taken upon the preliminary examination.[4] Finding other statutes addressed to the taking and use of depositions generally, the court determined that the inclusion of those provisions impliedly required the exclusion of any right on the part of the state to use the "depositions" taken at the preliminary hearing. Thus the use of the earlier transcribed testimony at Potter's trial was held to have been error.

---

1. *State v. Potter,* transcript at 27–31, 62–66. See generally Rev.Stat. (1887), Part Fourth—Penal; Part II, Title III, Ch. VII, §§ 7565–7589. The court's statement in *Potter* that the depositions could just as well have been taken *ex parte* is not supported on the face of the record or in light of the applicable statutory protections guaranteeing counsel and defense confrontation of witnesses at the preliminary examination.

2. Rev.Stat. § 7576(5). All other requirements of that section were met.

3. Had the Idaho Supreme Court addressed the question presented, i. e., whether antedated certification by the magistrate was proper, the depositions would have been admissible. *State v. Clark,* 4 Idaho 7, 10, 35 P. 710 (1894) (compliance with all requirements except certification substantially satisfies legislative mandate and later certification proper).

4. Facially, this is correct. However, there existed no statutory reference to the use of preliminary hearing testimony by *either* the defense or the prosecution. There being no legislation on point, the rule at this time, as noted in *Potter,* was the common law rule allowing admission. *Evans, supra,* 2 Idaho at 656, 23 P. 232.

An alternative ground for the court's ruling in *Potter* was application of the confrontation clause of the United States Constitution.[5] The court saw use of the preliminary hearing testimony at trial as violative of that constitutional protection. In 1899, however, the clause was not applicable to the states. See *Pointer v. Texas*, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965) (confrontation clause made binding upon the states through the Fourteenth Amendment). A discussion of current constitutional law on this subject appears *infra.*

We find the conclusion of the *Potter* court that the statutory law of the state and federal constitutional law required the exclusion of preliminary hearing testimony ("depositions") erroneous.

A review of the statutes in effect in the latter territorial and early statehood years indicates a number of provisions concerned with "depositions." Major areas of legislative pronouncement provided for the taking and use of depositions of parties on behalf of the defendant when it was feared that these witnesses would be unavailable for trial, however there was no provision for similar preservation of testimony by the state.[6] The only other legislative statements concerning "depositions" were entirely unrelated to the concept of deposing witnesses in anticipation of use of that testimony at trial—these were the above noted provisions providing for the recordation of preliminary hearing testimony. The underlying belief of the Idaho court that these "depositions" were not only unconstitutional but also impliedly forbidden by the legislature's enactment of other provisions generally concerned with depositions was commented upon by Professor Wigmore.

"In dealing with *depositions* and *former testimony* of deceased or absent witnesses, our courts have almost unanimously received them, when offered against the accused in criminal prosecutions, as not being obnoxious to the constitutional provision, if the right of cross-examination had been satisfied.

. . . .

But nevertheless early doubt as to the constitutional propriety of allowing the prosecution to use depositions against the accused was widespread at the bar, a hundred years ago. The doubt showed itself in the legislature's *omission*, when providing authority for taking depositions generally, to include *statutes authorizing the taking of depositions on behalf of the prosecution.* This omission was almost universal in the several states. Hence, regardless of what the courts might have held if such depositions (as distinguished from testimony at a former trial) were sought to be used, there was little or no opportunity to present the question; for in practice they could not be taken, lacking the authority in any officer to take them.[5]

---

5. United States Constitution, 6th Amendment ("In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . ."). The Idaho Constitution has never contained equivalent language. See, *infra*, n. 8.

6. See Rev.Stat. Part Fourth—Penal, Part II, Title X, Ch. IV §§ 8160–8171 (Examination of Witnesses Conditionally) and Ch. V §§ 8176–8189 (Examination of Witnesses on Commission), currently I.C. §§ 19–3101 *et seq.*, 19–3201 *et seq.* Both chapters involved only preservation in the defendant's behalf. See, however, the "security" sections of the preliminary examination provisions, Rev.Stat. § 7588 (currently I.C. §§ 19–821, 824) allowing for preservation of testimony through deposition by the state if a witness' sureties appear insufficient.

"5 The following rulings show the application of the principle: *State v. Potter*, 6 Idaho 584, 57 P. 431 (1899) (depositions taken on preliminary examination by the state not to be used at all at the trial, because not expressly authorized by statute; the opinion ignores the common-law practice, § 1375 *supra*; this is in truth not a deposition at all, but testimony at a former trial); . . . :" (Emphasis in original.) 5 Wigmore § 1398, p. 185–189 (Chadbourne rev. 1974).[7]

7. § 1375 of 5 Wigmore referred to states in pertinent part, at p. 61:

"*Testimony before a committing magistrate or justice of the peace.* Similar considerations apply to proceedings before a committing magistrate or a justice of the peace. If there was under the procedure of that official an opportunity of cross-examination, the testimony is admissible; otherwise not. There

These comments reveal the initial error of the *Potter* court in failing to distinguish between former testimony "depositions" and depositions properly so called. The comments also presage the second error of the court in holding the testimony inadmissible. There was indeed an historical concern that prosecution use of depositions or *ex parte* affidavits would be constitutionally impermissible, and this apprehension was the subject of considerable debate at our state's constitutional convention.[8] However, the constitutional propriety of using *former testimony* upon the unavailability of a witness had never been so questioned. As noted in the annotation at 15 A.L.R. 495, "Use in criminal case of testimony given on formal trial, or preliminary examination, by witness not available at present trial":

> "The rule has been settled now in practically every jurisdiction that the reproduction of testimony taken at a former trial or in the presence of accused at a preliminary hearing, when the presence of the witness cannot be secured, does not contravene the constitutional right of an accused to confront the witnesses against him, in whatever language such right has been given." 15 A.L.R. at 503.

After elaborating upon the weight of authority in support of this statement, the annotation continues:

> "Some other courts have held that the right of accused to be confronted with the witnesses against him is not afforded by conferring the right at the preliminary hearing [citing *U. S. v. Angell*, 11 F. 34 (1881) and *Potter*] . . . .
>
> The *Angell* case is out of harmony with later cases in the Federal court, so that the only court which seems to be committed, at the present time, to the rule that reproduction of testimony of an unobtainable witness violates the provision of the Constitution seems to be Idaho." 15 A.L.R. at 511–512.[9]

Thus it appears that the Idaho Supreme Court in 1899 was mistaken not only in assuming that the legislature impliedly excluded use of former preliminary hearing testimony but also in assuming and ruling that the federal constitution prohibited such use.[10] It is the decision of this court that the decision in *State v. Potter, supra*, should not stand.

It is also the conclusion of the court that the reaffirmation of *Potter* in *State v. Villarreal*, 94 Idaho 246, 486 P.2d 257 (1971), in which this court cited with approval the "policy" grounds for exclusion set forth in *Potter*, must be overruled. As is now apparent, the *ratio decidendi* of *Potter* was twofold—the implied statutory exclusion by omission and the application of the federal confrontation clause. The apparent misunderstandings by the *Potter* court relative to both grounds renders the decision itself, and

---

never has been any doubt on this point since the establishment of the general doctrine . . . in 1696 . . . .

On principle, as has often been pointed out, the question in all such cases depends simply upon whether there was an opportunity of cross-examination . . . ." (footnotes omitted)

8. See generally, Proceedings and Debates, Constitutional Convention of Idaho, 1889 (Hart, ed. 1912), Vol. I, pp. 281–288. The framers were clearly concerned with possible use by the state of *ex parte* affidavits, and some felt that allowing the prosecution to take depositions could lead to abuses of the process. However, others felt that the legislature should be free to legislate in this regard and provide if it wished for prosecutorial deposition of witnesses contingent upon guarantees of counsel and cross-examination. This latter group of convention delegates was successful in having omitted from the Idaho Constitution any language equivalent

to the federal confrontation clause expressly on the ground that, should the legislature decide to so provide for depositions on behalf of the state, policy arguments thereon should not be elevated to constitutional proportions.

9. While the annotation mentions that the federal provision was not at the time of writing applicable to the states, it fails to mention that Idaho had no confrontation clause language and necessarily relied instead upon the Sixth Amendment to the United States Constitution.

10. See Justice Brennan's dissent in *California v. Green, infra*, 399 U.S. 149, 189, 90 S.Ct. 1930, 1951, 26 L.Ed.2d 489 (1970). See also *Gov't of Virgin Islands v. Aquino*, 378 F.2d 540, 549 (3d Cir. 1967) (dislike but must accept rule which does not distinguish between former trials and preliminary hearings for confrontation clause purposes).

its use as authority in *Villarreal* suspect. The continued vitality of any state "policy" expressed in these cases, being essentially dependent upon the federal constitutional provision, is contingent upon the construction of the confrontation clause by the United States Supreme Court. The law in this regard has been clarified in the decade since *Villarreal*, and does not support exclusion of the prior recorded testimony from the preliminary hearing.

*Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), the most recent statement of the United States Supreme Court on the subject, was not decided at the time of the trial of this case nor at the time of the initial briefing by counsel. The court in *Roberts* sets forth the fundamental approach to be followed when testimony taken at a preliminary examination is sought to be introduced at trial against a criminal defendant.

"The Confrontation Clause operates in two separate ways to restrict the range of admissible hearsay. First, in conformance with the Framers' preference for face-to-face accusation, the Sixth Amendment establishes a rule of necessity. In the usual case (including cases where prior cross-examination has occurred), the prosecution must either produce or demonstrate the unavailability of the declarant whose statement it wishes to use against the defendant. See *Mancusi v. Stubbs*, 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed.2d 293 (1972); *Barber v. Page* [390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255], *supra*. See also *Motes v. United States*, 178 U.S. 458, 20 S.Ct. 993, 44 L.Ed. 1150 (1900); *California v. Green*, 399 U.S., at 161–162, 165, 167, n. 16, 90 S.Ct., at 1936–1937, 1938, 1939, n. 16.

The second aspect operates once a witness is shown to be unavailable. Reflecting its underlying purpose to augment accuracy in the fact-finding process by ensuring the defendant an effective means to test adverse evidence, the Clause countenances only hearsay marked with such trustworthiness that 'there is no material departure from the reason of the general rule.' *Snyder v. Massachu-*

*setts*, 291 U.S. [97], at 107, 54 S.Ct. [330], at 333 [78 L.Ed. 674]." 448 U.S. at 65, 100 S.Ct. at 2538–9, 65 L.Ed.2d at 607.

The court states that the underlying principle for confrontation analysis is whether the statement sought to be put before the trier of fact bears sufficient "indicia of reliability" to create a satisfactory basis for ascertaining and evaluating the truth of the statement. 448 U.S. at 65–6, 100 S.Ct. at 2539, 65 L.Ed.2d at 607. See *also, Mancusi v. Stubbs*, 408 U.S. 204, 213, 92 S.Ct. 2308, 2313, 33 L.Ed.2d 293, 301 (1972); *California v. Green*, 399 U.S. 149, 161, 90 S.Ct. 1930, 1936, 26 L.Ed.2d 489, 498 (1970). The Court continues in *Roberts* :

"The Court has applied this 'indicia of reliability' requirement principally by concluding that certain hearsay exceptions rest upon such solid foundations that admission of virtually any evidence within them comports with the 'substance of the constitutional protection.' This reflects the truism that 'hearsay rules and the Confrontation Clause are generally designed to protect similar values,' ... and 'stem from the same roots' ...." (citations omitted) 448 U.S. at 66, 100 S.Ct. at 2539, 65 L.Ed.2d at 608;

and concludes:

"In sum, when a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate 'indicia of reliability.' Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness." *Id.*

Thus the Supreme Court mandates an analysis on two fronts: whether the declarant is unavailable and whether the statement bears adequate guarantees of reliability and trustworthiness to allow it placed before the trier of fact.

It is clear from *Roberts* that unavailability is a Constitutional prerequisite to admission of prior testimony against a defendant at trial. The trial court below necessarily found Ms. Priest to be "unavailable" for live testimony before the jury when it ordered the reading of her testimony from the preliminary hearing transcript. If Ms. Priest was not in fact unavailable, however, the admission of her prior testimony would be erroneous under *Roberts*' two-facet analysis.

It was stated in *Roberts*:

"The basic litmus of Sixth Amendment unavailability is established: '[A] witness is not "unavailable" for the purposes of . . . the exception to the confrontation requirement unless the prosecutorial authorities have made a *good faith effort* to obtain his presence at trial. [citations omitted]

. . . . The ultimate question is whether the witness is unavailable despite good faith efforts undertaken prior to trial to locate and present that witness. As with other evidentiary proponents, the prosecution bears the burden of establishing this predicate." 448 U.S. at 74–5, 100 S.Ct. at 2543, 65 L.Ed.2d at 613.

The court also notes that a long line of precedent requires the efforts undertaken to obtain the testimony to be "reasonable." Clearly this is a key concept in evaluating the situation below. Here reasonable and appropriate judicial pressure was applied in order to solicit Ms. Priest's testimony at trial. She was warned more than once, the record reflects, of possible sanctions including incarceration for contempt should she continue to refuse to testify. She was reminded that she had been granted immunity in regard to her possible involvement in this crime and that she had no grounds for refusing to testify on that score. She was called to the stand more than once, and counsel was made available for her to consult; she was given the opportunity to confer with him in the periods between the various attempts to obtain her testimony. These actions of the court and state appear to be reasonable and undertaken in good faith, and thus would be sufficient to establish Ms. Priest's "unavailability" under the standards established by the Supreme Court. *Ohio v. Roberts, supra,* 448 U.S. at 75, 100 S.Ct. at 2543, 65 L.Ed.2d at 613. *See also* 92 A.L.R.3d 1138 (Admission of former testimony of non-party witness present but refusing to testify at subsequent trial without valid privilege); 3 Wharton's Criminal Evidence, § 651 (13th ed. 1973, Cumm.Supp.1981); McCormick on Evidence, § 253, p. 612 (2d ed. 1972) (great weight of authority holds witness' refusal to testify despite appropriate judicial pressure establishes unavailability for purposes of hearsay exception); Federal Rule of Evidence 804(a)(2) declarant unavailable for purposes of hearsay rule when refusing to testify despite order of the court to do so).

In regard to the "indicia of reliability" component, the Supreme Court observed in *Roberts* :

"We need not decide whether the Supreme Court of Ohio correctly dismissed statements in *Green* suggesting that the mere opportunity to cross-examine rendered the prior testimony admissible. See Westen, the Future of Confrontation, 77 Mich.L.Rev. 1185, 1211 (1979) (issue is 'truly difficult to resolve under conventional theories of confrontation'). Nor need we decide whether *de minimus* questioning is sufficient, for defense counsel in this case tested, [the declarant's] testimony with the equivalent of significant cross-examination." *Ohio v. Roberts,* 448 U.S. at 70, 100 S.Ct. at 2541, 65 L.Ed.2d at 610.

The Ohio Supreme Court in *State v. Roberts,* 55 Ohio St.2d 191, 378 N.E.2d 492 (1978), had perceived dictum in *California v. Green, supra,* to the effect that the mere opportunity for cross-examination at the earlier judicial proceeding, a preliminary hearing, was sufficient for confrontation clause purposes. This court, in *State v. Villarreal,* also labeled that statement dictum:

"It is true that the court in *Green* unfortunately indulged in what appears to be dictum in that after discussing the merits

of the case it then went on to discuss whether or not the preliminary hearing testimony of the witness might have been admissible if he were not in fact present at trial and available for cross-examination." 94 Idaho at 248, 486 P.2d at 259. The "dictum" referred to by both courts declared:

"We also think that Porter's [the declarant] preliminary hearing testimony was admissible as far as the Constitution is concerned wholly apart from the question of whether respondent had an effective opportunity for confrontation at the subsequent trial. For Porter's statement at the preliminary hearing had already been given under circumstances closely approximating those that surround the typical trial. Porter was under oath; respondent was represented by counsel— the same counsel in fact who later represented him at the trial; respondent had every opportunity to cross-examine Porter as to his statement; and the proceedings were conducted before a judicial tribunal, equipped to provide a judicial record of the hearings. Under these circumstances, Porter's statement would, we think, have been admissible at trial even in Porter's absence if Porter had been actually unavailable, despite good-faith efforts of the State to produce him. That being the case, we do not think a different result should follow where the witness is actually produced." 399 U.S. at 165, 90 S.Ct. at 1938–1939, 26 L.Ed.2d at 501.

The Supreme Court in *Roberts*, however, clearly and vigorously holds the statement in *Green* to be neither dictum, nor an alternative holding, nor anything else that might limit its precedential significance. *Ohio v. Roberts, supra*, 448 U.S. at 69–70, n.10, 100 S.Ct. at 2540–41, 65 L.Ed.2d at 610. See also 448 U.S. at 73, 100 S.Ct. at 2542, 65 L.Ed.2d at 612 ("In *Green* the

Court found guarantees of trustworthiness in the accoutrements of the preliminary hearing itself . . . .") and 448 U.S. at 69, 100 S.Ct. at 2540, 65 L.Ed.2d at 609–610 ("These factors . . . provided all that the Sixth Amendment demands: 'substantial compliance with the purposes behind the confrontation requirement.' ").

Admittedly, the court in *Roberts* seems to focus upon the fact that, in that case, actual cross examination occurred as a matter of function if not form. And, while the court disavows any need to decide whether either the mere opportunity to cross-examine or actual but *de minimis* questioning is sufficient, *supra*, the court later states in notation:

"We need not consider whether defense counsel's questioning at the preliminary hearing surmounts some inevitably nebulous threshold of 'effectiveness' . . . . [Under the 'unusual' circumstances of *Mancusi, supra*,] it was necessary to explore the character of the actual cross-examination to ensure that an adequate opportunity for full cross-examination had been afforded to the defendant. Cf. *Pointer v. Texas*, 380 U.S. at 407, 85 S.Ct. at 1069. We hold that in all but such extraordinary cases, no inquiry into 'effectiveness' is required. A holding that every case involving prior testimony requires such an inquiry would frustrate the principal objective of generally validating the prior testimony exception in the first place—increasing certainty and consistency in the application of the Confrontation Clause . . . ." 448 U.S. at 73, n. 12, 100 S.Ct. at 2543, n.12, 65 L.Ed.2d at 612.

Thus we are presented with a facial statement of the court professing that the question of the constitutional sufficiency of the mere opportunity to cross-examine at the preliminary hearing is reserved.[11] Yet

---

11. A number of state and lower federal courts addressing this issue have held that "opportunity" or "adequate opportunity" to cross-examine at the preliminary hearing is sufficient for confrontation purposes. See e. g., *Glenn v. Dallman*, 635 F.2d 1183, 1185–87 (6th Cir. 1980); *Phillips v. Wyrick*, 558 F.2d 489 (8th Cir. 1977), *cert. den.* 434 U.S. 1088, 98 S.Ct. 1283, 55 L.Ed.2d 793 (1978); *U. S. v. Allen*, 409 F.2d 611 (10th Cir. 1969); *Gov't of Virgin Islands v. Aquino, supra* n. 10; *Butler v. Wilson*, 365 F.2d 308 (9th Cir. 1966); *Jones v. Califor-

language in *Green* pointing to this conclusion is strongly reaffirmed; the determination in *Green* that the accoutrements of the prior hearing themselves lend reliability is again favorably noted; it is held that statements within well-recognized hearsay exceptions generally, without more, meet the demands of the confrontation clause; it is further held that in all but extraordinary situations there is no call for inquiry into the effectiveness of any earlier cross examination; and all this occurs within a tightly structured legal framework emphasizing the need not for actual prior cross examination but rather for sufficient indications of trustworthiness and reliability which support the submission of the prior statements to the trier of fact.[12] While earlier cases may have indicated that cross-examination was the most important guarantee of trustworthiness, and while it still may be "beyond any doubt the greatest legal engine ever invented for the discovery of truth," [13] it apparently is no longer to be considered the *sine qua non* of confrontation clause analysis.

McCormick observes in his treatise on evidence that

"When unavailability of the declarant is made a condition precedent to admitting his hearsay statement, a rule of preference is in fact being stated. His personal presence in court, under oath and subject to cross-examination, would be preferred. If, however, that cannot be had, then his hearsay statement falling within the particular hearsay exception, although admittedly inferior, is still to be preferred over doing entirely without evidence 'from that source." McCormick, *supra*, § 253, p. 608.

And the Supreme Court itself stated in *Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973):

"The right of cross-examination is more than a desirable rule of trial procedure. It is implicit in the constitutional right of confrontation, and helps assure the 'accuracy of the truth-determining process' .... It is, indeed, 'an essential and fundamental requirement for the kind of fair trial which is this country's constitutional

---

nia, 364 F.2d 522 (9th Cir. 1966); *Russell v. State*, 604 S.W.2d 914 (Tex.Cr.App.1980); *Dilworth v. State*, 611 P.2d 256 (Okl.Cr.1980); *State v. Hicks*, 591 S.W.2d 184 (Mo.App.1979); *Crawford v. State*, 282 Md. 210, 383 A.2d 1097 (1978); *State v. Erickson*, 241 N.W.2d 854 (N.D.1976); *State v. Dixon*, 107 Ariz. 415, 489 P.2d 225 (1971); *State v. Roebuck*, 75 Wash.2d 67, 448 P.2d 934 (1968); *Commonwealth v. Mustone*, 353 Mass. 490, 233 N.E.2d 1 (1968); *State v. Crawley*, 242 Or. 601, 410 P.2d 1012 (1966). See also, cases collected in Annot. 15 A.L.R. 495 (1921), and supplemental annotations at 79 A.L.R. 1392 (1932), 122 A.L.R. 425 (1939), and 159 A.L.R. 1240 (1945); 3 Wharton's Criminal Evidence, *supra*, § 650; McCormick on Evidence, *supra*, §§ 255, 257, 258.

12. Clearly prior cross-examination is a relevant concern only in regard to the hearsay exception regarding former testimony. In other situations, the hearsay statements offered in the absence of the declarant must be independently evaluated for reliability without regard to the testing of the statement for reliability through cross-examination. See, e. g., *Shaffer v. Field*, 484 F.2d 1196 (9th Cir. 1973) (spontaneous statements exception). The Supreme Court expressed the belief in *Roberts* that well founded hearsay exceptions generally establish the reliability by their very nature. The conclusion adopted is strikingly similar to the theory of

Justice Harlan, set forth in concurrence to *California v. Green, supra,* and *Dutton v. Evans,* 400 U.S. 74, 91 S.Ct. 210, 27 L.Ed.2d 213 (1970). In *Green*, the Justice viewed the confrontation clause as establishing a "rule of necessity" under which the state was to produce all available declarants whose statements were to be used against the defendant at trial. After unavailability of the declarant was shown, the inquiry was to become one of due process and the statements could be used if they were sufficiently reliable to afford the defendant a fair trial. Justice Harlan's theory may not have gained the express recognition in *Roberts* it deserved since Harlan disavowed a "pure" rule of necessity in *Dutton* on the ground that such a rule would require production of all "available" declarants at a potentially great and undue burden upon the state even when their actual presence would be of little or no utility to the defendant or the trier of fact and would not significantly alter the fairness of the trial process. Examples of unnecessary production of declarants mentioned by the Justice included those within the hearsay exceptions for learned treatises and for business records. See also Westen, The Future of Confrontation, 77 Mich. L.Rev. 1185 (1979).

13. 5 Wigmore, *supra*, § 1367, p. 32.

goal ....' Of course, the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process .... But its denial or significant diminution calls into question the ultimate 'integrity of the fact-finding process' and requires that the competing interest be closely examined." 410 U.S. at 295, 93 S.Ct. at 1046, 35 L.Ed.2d at 309. (citations omitted). The Supreme Court today apparently feels that, in closely examining these competing interests, the reliability inherent in the former testimony hearsay exception, guaranteed by the accoutrements of the former judicial proceeding including the opportunity to subject the declarant to cross examination, weighs in favor of presenting the earlier testimony to the trier of fact. When the declarant is unavailable, but has previously testified in a judicial forum complete with oath, recordation, presence of the defendant and counsel, and adequate opportunity to cross-examine, that earlier testimony is admissible without violation of the confrontation clause of the United States Constitution.

In light of the preceding discussion, both *State v. Potter, supra,* and *State v. Villarreal, supra* are overruled. There exist no independent state grounds for exclusion of the preliminary hearing testimony, nor does it appear that there exist constitutional grounds for exclusion of that testimony.

A final matter requires our attention. The state has conceded that without the testimony of Ms. Priest, the evidence would be insufficient to convict the appellant of the charge pressed; indeed a review of the record reflects as much. Under the rule announced today recognizing the admissibility of such preliminary hearing testimony, the conviction would be supported, yet under the rule in existence at the time of appellant's trial the evidence was insufficient. It can be noted in this regard that appellant's counsel specifically raised and argued the prohibitory rule of *Villarreal* to the district court below.

As in the recent case of *State v. Byers,* 102 Idaho 159, 627 P.2d 788 (1981), to apply a new appellate ruling in passing upon the validity of an earlier conviction in such circumstances as present here would be the equivalent of applying an ex post facto law in violation of both federal and state constitutional provisions. 627 P.2d at 795. Thus the rule set forth by this court herein is to be applied prospectively only. Moreover, as also explained in *Byers,* the double jeopardy clause precludes a second trial once the reviewing court has determined that there was insufficient evidence introduced at trial to sustain the verdict. 627 P.2d at 796.

The judgment of conviction is reversed and the cause remanded with directions to dismiss the complaint.

BAKES, C. J., and DONALDSON, J., concur.

BISTLINE, Justice, concurring and dissenting.

A majority of the Court have now determined that they were in error in voting with Justice Shepard in *State v. Villarreal,*[1] which was handed down just ten years ago. I am not so persuaded, but do agree that the Court, in reversing with directions to dismiss, is correctly applying *Greene v. Massey,* 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978), and *Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978)—which we recently relied upon in *State v. Byers.*[2]

In siding with Justice Shepard, I point out only that the Court's longtime stance against the use at trial of preliminary hearing testimony remains tuned to the purpose and scope of preliminary hearings in Idaho's criminal jurisprudence. I see nothing basically wrong in making a change in the case law simply because it is a change—but I doubt the advisability of making that change until it is made clear by the Court that the magistrate at a preliminary hear-

1. *State v. Villarreal,* 94 Idaho 246, 486 P.2d 257 (1971).

2. *State v. Byers,* 102 Idaho 159, 627 P.2d 788 (1981).

ing will be a lawyer magistrate[3] who is, as is the case with a grand jury, given to understand that he is not prohibited from making factual determinations in reaching his determination[4] that a crime has been committed and that there is sufficient evidence to establish probable cause that the accused may be guilty.

The Court has not yet reached that point, however, for which reason, plus the fact that the problem before the trial court is not a consistently recurring one, I believe that the trial bar generally and the litigants represented in criminal cases would fare far better were the Court not to interfere at this time with long established case law, especially absent any illuminating reasoning for doing so.

Another aspect of this case which fails to excite the interest of other members of the Court is the unusual manner in which the preliminary testimony came to be offered and accepted. Although one would expect that the prosecuting attorney advanced this alternative remedy, it is quite clear from the record that the trial court, correctly anticipating this Court's turnabout from *Villarreal*, suggested the procedure to the prosecutor. To be sure the trial court was only interested in seeing that all of the state's case got before the jury, but there is a strong doubt in my mind that a trial judge should ever instruct, suggest or intimate to a prosecutor ways and means by which evidence may be submitted against a person criminally accused. On those grounds alone I would reverse and save the demise or survival of *Villarreal* for another day. Especially would I so hold where the recalcitrant witness's tenacity was not tested by even a few hours in jail.

SHEPARD, Justice, dissenting.

The opinion of the majority is, I believe, erroneous and will result in substantial and far reaching damage to our system of criminal justice. Hence, I respectfully dissent.

The majority opinion all at the same time tells too much and tells too little. The majority tells us more than we need or even want to know of *California v. Green*, 399 U.S. 149, 90 S.Ct. 1930, 26 L.Ed.2d 489 (1970), and *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), neither of which are particularly applicable to the case at bar. Also, the majority tells us much about "depositions" and on the other hand tells us nothing of its reasons for overruling the policy considerations and policy decisions which are both explicit and inherent in *State v. Potter*, 6 Idaho 584, 57 P. 431 (1899), and *State v. Villarreal*, 94 Idaho 246, 486 P.2d 257 (1971). Finally, the majority fails to even mention or much less consider the enormous changes which its opinion will bring about in the prosecution and defense of criminal cases in the State of Idaho.

I see the following issues presented in the instant case. First, is the sixth amendment Confrontation Clause of the Federal Constitution violated when a state, by statute or judicial ruling, permits the testimony of a preliminary hearing witness to be introduced at trial when that witness is not in court or is otherwise "unavailable." I deem the answer to be possibly yes, but probably no. Secondly, whether Idaho, as a matter of local policy, has or should now permit such introduction of preliminary hearing testimony. *Potter* and *Villarreal* clearly answer that question in the negative. The latter part of that question is totally and completely unanswered by the majority opinion, *i. e.*, what local policy considerations in the state of Idaho mandate either overthrowing or upholding the presently existing rule of *Potter* and *Villarreal*.

As indicated in *State v. Villarreal, supra*, the case of *California v. Green, supra*, is distinguishable from the instant matter. *Green* involved a witness who was on the stand during the trial and whose testimony was sought to be impeached or refreshed by the utilization of his previous testimony at a preliminary hearing. In *Green* the court

---

3. *See State v. Ruth*, 98 Idaho 879, 882 n.1, 574 P.2d 1357, 1360 n.1 (1978) (Bistline, J., specially concurring).

4. *See Stockwell v. State*, 98 Idaho 797, 813, 573 P.2d 116, 132 (1977) (Bistline, J., dissenting).

particularly noted that the declarant was present and testifying at trial and that the defendant was thereby assured of full and effective cross-examination at the time of trial. That court specifically stated:

"We have no occasion in the present case to map out a theory of the Confrontation Clause that would determine the validity of all such hearsay 'exceptions' permitting the introduction of an *absent declarant's statements.* For where the *declarant is not absent,* but is present to testify and to submit to cross-examination, our cases, if anything, support the conclusion that the admission of his out of court statements does not create a confrontation problem." *Id.* 399 U.S. at 162, 90 S.Ct. at 1937. (Emphasis added.)

Therefore, in *Green* the court had for consideration an in court testifying declarant and whatever overbroad language was used regarding the statements of an out of court declarant remains, of course, dicta. It should also be noted that in *Green* Justices Marshall and Blackman did not participate, the Chief Justice and Justice Harlan filed special concurring opinions and Justice Brennan dissented. Therein it is noted that the concurrence of the Chief Justice is secured by his clear understanding that nothing forbids the individual states from applying a different rule.

Likewise, the case of *Ohio v. Roberts, supra,* is distinguishable from the instant case. There a preliminary hearing witness had disappeared at the time of trial and the state sought to introduce her preliminary hearing testimony under an Ohio statute so permitting the use of preliminary examination testimony. Ohio Rev.Code Ann. § 2945.49 (1975). Upon conviction the Ohio Supreme Court reversed, holding that the statute was a violation of the Confrontation Clause of the United States Constitution. In turn, the United States Supreme Court reversed, holding that there was no such constitutional violation. Hence, *Roberts* upholds the basic rationale of *Green* that the states remain free to make their own decisions in this area without violating the Confrontation Clause of the Federal Constitution.

The majority opinion here having determined that permitting the introduction of preliminary hearing testimony is not violative of the Confrontation Clause of the Federal Constitution, then asserts:

"An alternative ground for the court's ruling in *Potter* was application of the Confrontation Clause of the United States Constitution. The court saw use of the preliminary hearing testimony at trial as violative of that constitutional protection."

Such statement finds no support whatsoever in *Potter.* The only mention in *Potter* of the federal constitutional Confrontation Clause is:

"It is true that the framers of *our* constitution saw fit to omit from that instrument the usual provision which obtains in not only the federal constitution, but in that of most of the states providing that in all criminal prosecutions the defendants shall be confronted with witnesses against him. Doubtless this omission was made advisedly, and the effect was to leave the matter with the legislature." *Id.,* 6 Idaho, at 588, 57 P. at 432. (Emphasis added.)

The decision in *Potter* was not based on the Federal Constitutional Confrontation Clause, but as pointed out a scant year later in *State v. White,* 7 Idaho 150, 61 P. 517 (1900) was based on the lack of permission therefor in the Idaho statutes. Finally, those provisions of the Federal Constitution were not applicable to the states at the time of *Potter.*

Thus, in its discussions of the Confrontation Clause of the Federal Constitution the majority here has merely set up and demolished a straw man. The question remains unanswered in the majority opinion as to what policy reasons presently exist for either overthrowing or upholding the rule of *Potter* and *Villarreal.* Regardless of the majority's discourse on "depositions," it is crystal clear that the court in *Potter* clearly stated that preliminary hearing testimony would not be permitted introduction at trial. The reasons therefor were enunciated and, as quoted in *Villarreal*:

"When we recall as every lawyer who has any extended experience in criminal law practice may do, how very perfunctory these preliminary examinations are, not only on the part of the prosecution, but more frequently, of necessity, on the part of the defendant, the uncharitableness of the rule is apparent. It is always the policy of the prosecution, on preliminary examinations, to only carry its investigations to the extent necessary to secure the holding of the defendant; and it is seldom that the defendant feels warranted in going fully into his defense upon a preliminary examination before a court, where it is only required that it shall be made to appear that the offense named has been committed, 'and that there is sufficient cause to believe the defendant to have been guilty thereof.'" *Id.*, 94 Idaho at 248, 486 P.2d at 259, quoting *State v. Potter, supra*, 6 Idaho at 589, 57 P. at 432.

The purpose, nature and timing of a preliminary hearing in our system of criminal justice to me dictate the disability of a rule excluding preliminary hearing testimony from the actual trial proceedings. The only *function of a preliminary hearing in Idaho* is to determine if a public offense has been committed and if there is probable cause to believe that the crime was committed by the accused. *State v. Ruddell*, 97 Idaho 436, 546 P.2d 391 (1976); *State v. Haggard*, 94 Idaho 249, 486 P.2d 260 (1971); *State v. Linn*, 93 Idaho 430, 462 P.2d 729 (1969); *Freeman v. State*, 87 Idaho 170, 392 P.2d 542 (1964); *State v. Bilboa*, 33 Idaho 128, 190 P. 248 (1920). *See also* Idaho Criminal Rule 5.1. As stated in *State v. Linn, supra*, 93 Idaho at 434, 462 P.2d at 733, "[a] preliminary hearing is in no sense a trial and therefore it does not require the same formality and precision observed at a trial." It is perhaps for that reason that the evidentiary rules are more relaxed in a preliminary hearing. *See* Idaho Criminal Rule 5.1. Indeed, in *Freeman v. State, supra*, a preliminary hearing was determined to be not such a critical stage of the criminal procedure that the failure to furnish counsel denied the accused a fundamental constitu-

tional right. It has been stated, "In most * * * criminal prosecutions, the preliminary examination is conducted as a rather perfunctory uncontested proceeding with only one likely denouement—an order holding the defendant for trial." *California v. Green, supra*, 399 U.S. at 196, 90 S.Ct. at 1955 (Brennan, J., dissenting), quoting *People v. Gibbs*, 255 Cal.App.2d 739, 743–44, 63 Cal.Rptr. 471, 475 (1967). The defense has little reason to cross-examine prosecution witnesses since "[o]nly television lawyers customarily demolish the prosecution in the magistrate's court," and it is assumed by most to be a tactical error to indulge in extensive cross-examination of prosecution witnesses since such "may easily amount to a grant of gratis discovery to the state." *Id.* Until this point in time a preliminary hearing has been a truncated proceeding conducted in a relatively informal manner at the conclusion of which there can only be a finding of "probable" cause as contrasted with the establishment of guilt beyond a reasonable doubt.

It is in the area of the timing of a preliminary hearing where I perceive the majority opinion will create the most havoc. Until today it has been deemed advisable by the prosecution, the defense and the courts that an accused be granted a preliminary hearing at a very early point in time. Reflecting the concern of the court is Idaho Criminal Rule 5.1 indicating that if an accused is in custody, a preliminary hearing must be held "in any event not later than fourteen (14) days following the defendant's request for a preliminary hearing," and if not in custody then "no later than twenty-one (21) days after the request for a preliminary hearing." From the standpoint of the prosecution, it is clearly undesirable to, at the preliminary stage, conduct an entire trial, but rather it is better to present only such evidence as will satisfy the probable cause requirement, to thereafter file an information and then prepare for and go to total trial as quickly as possible to be consistent with the accused's right to a speedy trial. From the defense standpoint, if the prosecution has no case, it will be discovered in

its failure to sustain its burden of showing probable cause and the accused will be free at an early time.

If an accused must anticipate that upon his ultimate trial he may be faced with the testimony taken at the preliminary hearing, he must be thoroughly prepared at the preliminary hearing. Clearly, all discovery on the part of the defense must be completed prior to the preliminary hearing and presumably all motions to suppress or for a physical or a mental examination and the like should have been made and ruled upon prior to the preliminary hearing. The defense would not be able to, as is presently customary, reserve its cross-examination for the time of trial. In brief, the resultant preliminary hearing procedure would in time and effort be largely duplicative of that spent at a subsequent trial. I doubt that the increased thorough preparation for a preliminary hearing can be conducted within the time constraints of our present rules and policies. The nature and timing of our present procedures do not provide sufficient indicia of reliability. Hence, our procedures must change.

This state has since early days consistently prohibited the introduction of preliminary hearing testimony at trial. In my judgment, such ruling is bottomed on sound policy and practical considerations. The majority opinion does not mention, much less discuss, the practical and policy considerations for the rule of exclusion nor the impact of today's decision. It merely blindly overrules. The decisions of the United States Supreme Court discussed by the majority hold only that if a state, by statute or judicial ruling, permits preliminary hearing testimony to be introduced at trial, such does not offend the Confrontation Clause of the United States Constitution. I know of no case, and the majority opinion cites none, holding that if a state prohibits the introduction of preliminary hearing testimony, at trial that it has somehow committed error of constitutional dimension.

I am authorized to say that Justice BISTLINE concurs in this opinion.