309 P.2d 206

**STATE of Idaho, Plaintiff-Respondent,**

v.

**Don McKENNA, Defendant-Appellant.**

No. 8480.

Supreme Court of Idaho.

March 28, 1957.

Rehearing Denied April 15, 1957.

Meek & Miller, Caldwell, for appellant.

Graydon W. Smith, Atty. Gen., Lloyd C. McClintick, Pros. Atty., Nampa, J. R. Smead, Asst. Atty. Gen., for respondent.

PORTER, Justice.

Appellant was convicted in the District Court of Canyon County of the crime of assault with intent to commit robbery. He has appealed to this court from the judgment of conviction.

The evidence on behalf of the State shows the facts hereinafter set out. On December 31, 1955, Marvin L. Williams, a retired laborer 75 years of age, was living alone in his cabin in Nampa. He had on his person more than $2,500 in cash which he had been carrying for some time.

Appellant, during the months of November and December, 1955, was employed at the Simplot Dehydrating Plant in Caldwell. He worked a shift commencing at twelve o'clock at night. After getting off work in the morning, he would frequently drop into Milliner's Inn in Caldwell for a bottle of beer. In the latter part of November, 1955, he had a conversation with the witness, Harris Talley, who was also a frequenter of Milliner's Inn. He told Talley that there was an old man living in Nampa who carried two or three thousand dollars in cash around on his person. They then discussed trying to get this money. Shortly thereafter, they drove in Talley's automobile one evening over to Nampa and to the home of Mr. Williams. Appellant sat in the automobile while Talley went into the cabin of Williams, talked with him a few minutes and looked the place over. Talley then came back to the automobile and they drove back to Nampa.

Appellant and Talley had several conversations about the matter during the month of December. The witness, Robert Pierce, also had a conversation with appellant at Milliner's Inn on December 30th concerning which Pierce testified as follows:

"Q. What was said at this conversation? A. Mr. McKenna asked me if I would help him do a job. I said I would. He told me there was a fellow in Nampa that we could—he—hit him on his head and take his money, and that would be all there was to it. Then he asked me if I had someone that would help me, and I told him I did."

On the evening of December 30th, appellant, Talley, John Hicks and Robert Pierce went in Talley's car from Caldwell to Nampa and parked near the home of Williams. Hicks, Pierce and Talley got out of the car, went down the alley and Talley pointed out to Hicks and Pierce the cabin of Williams. Talley then came back to the car where appellant had remained. Hicks and Pierce decided not to go through with the robbery, waited awhile and then came back to the car and stated that Williams was not at home. Hicks and Pierce got in the automobile and they all went back to Caldwell. Appellant said he had to go to work and asked that he be taken to his car which was done. During the trip back someone said that they had gone too late and that they should go earlier if they tried it again.

Appellant is an experienced bartender. He did not have to work at Simplot's on the night of December 31st. He accepted tem-

porary employment for that night as a bartender at the Bamboo Room of the Golden Pheasant Cafe. That evening Talley called appellant over the telephone and asked to use appellant's car. Concerning this telephone conversation, Talley testified as follows:

"Q. Did you state to Mr. McKenna why you wanted to use the car? A. I said I thought I would go over to Nampa.

"Q. Did you state for what purpose? A. I may have.

"Q. Well, did you? A. Yes, I believe I did.

"Q. What was that? A. To take Hicks and those two boys over, and they said they was going to try to get the money from Mr. Williams.

"Q. Hicks and what two boys? A. I think one of them's name was Downard and the other was Newby or something like that.

"Q. Then, did McKenna consent that you could use his car? A. Yes.

"Q. Pursuant to this telephone conversation, did you go get his car? A. Yes."

Talley went to the Bamboo Room and got the keys to the car from appellant. Talley, John Hicks, Robert Lee Downard and Floyd Darbin drove in appellant's car to Nampa and parked near the home of Williams. Talley remained in the car and the other three went into the house. One of them grabbed Williams, another started beating him about the head with a blackjack and the third one began searching his pockets. Williams succeeded in breaking loose, stepped into his bedroom and secured his gun. He shot all three of his assailants. Downard and Darbin were fatally wounded but Hicks recovered although he lost the sight of one eye. Talley drove back to Caldwell and returned appellant's car. Talley then had some conversation with appellant with reference to an alibi.

Appellant sets out ten specifications of error in his brief. Specification of Error No. I is that the court erred in the admission in evidence of State's Exhibit No. 6, the same being a blackjack, for the reason that such exhibit was never identified as having been used in the commission of the crime, was not found at the scene of the crime and was never in any way connected with the defendant. The evidence discloses that Harris Talley had owned a blackjack since 1946. That he had his blackjack with him on the trip from Caldwell to Nampa the evening of December 30th. That he gave the blackjack to Pierce before Pierce and Hicks went to the home of Williams. That when they returned, Pierce gave the blackjack back to Talley. That Talley had the blackjack with him on the night of December 31st. That he gave

the blackjack to Darbin when Darbin, Hicks and Downard started to the home of Williams. Officer Honeycutt, who went to the scene of the attempted robbery immediately after it had occurred, gave the blackjack, State's Exhibit No. 6, and Darbin's clothing to Officer Baker who had custody of the blackjack thereafter.

■ Witness Talley identified Exhibit No. 6 as his blackjack by reason of its color, although on cross-examination he admitted the difficulty of identifying a blackjack with complete certainty. However, there is no question here of distinguishing between two blackjacks. No other blackjack is mentioned in the evidence. The evidence as to the identity of State's Exhibit No. 6 and its connection with the offense was sufficient for submission of the matter to the jury. The court did not err in admitting State's Exhibit No. 6 in evidence.

■ Specification of Error No. II is that the court erred in admitting evidence of a telephone conversation between the witness Talley and appellant on the ground there was no proper foundation laid for the admission of such conversation. This is the telephone conversation testified to by the witness Talley as occurring on the evening of December 31st wherein he asked to borrow appellant's car. In his direct examination, appellant admitted such telephone conversation and testified to what was said therein. Appellant cannot now predicate error upon any alleged failure to lay a proper foundation for the admission in evidence of such telephone conversation.

■ Specification of Error No. III is that the court abused its discretion in allowing the Prosecuting Attorney to ask leading questions of witnesses for the State, particularly, the witness Talley. The questions and answers complained of are too long to be set out herein. An examination of same indicates that the court was strict in its rulings and did not in any way abuse its discretion in overruling objections to questions by the State.

■■ Specification of Error No. IV is that the court erred in refusing to grant appellant's motion to quash and set aside the information on the ground that no proper preliminary examination had been had as the record shows the magistrate refused to grant appellant's motion for the exclusion of all persons under the provisions of Section 19–811, I.C. This section reads as follows:

"The magistrate must also, upon the request of the defendant, exclude from the examination every person except his clerk, the prosecutor and his counsel, the attorney general, the prosecuting attorney of the county, the defendant and his counsel, and the officer having the defendant in custody."

Committing magistrates should abide by and enforce the provisions of this section. However, a failure to do so is not necessarily prejudicial error. The enforcement of this section is not a jurisdictional matter but is a procedural one. The affidavit of Attorney Dean Miller in support of the motion to quash the information shows that there was present at the preliminary hearing a newspaper reporter and several other people. However, the record, including such affidavit, does not show any prejudice resulting to appellant from the magistrate's failure to grant appellant's motion to exclude such persons from the courtroom. The magistrate's error amounted only to a procedural irregularity not resulting in prejudice to appellant, and does not constitute reversible error. State v. Clark, 4 Idaho 7, 35 P. 710; State v. Ayres, 70 Idaho 18, 211 P.2d 142; State v. Main, 37 Idaho 449, 216 P. 731; Section 19–2819, I.C.

In the case of State v. Cronk, Idaho, 307 P.2d 1113, although it does not appear on the face of the decision, we considered and decided a motion to quash the information on the ground that the committing magistrate had denied a motion to exclude spectators from the courtroom under the provisions of Section 19–811, I.C. We held that the error of the committing magistrate was a procedural irregularity and was not a prejudicial error requiring reversal of the cause.

Specification of Error No. V reads as follows:

"The Court erred in denying plaintiff's motion to strike the allegations from the Information, as follows:

" 'That Don McKenna, he having previously had a preliminary hearing on said charge before B. R. Riordan, Probate Judge, on the 17th and 31st days of January, 1956, and by said B. R. Riordan thereafter held to answer said charge in this Court * * *' for the reason that the same is not a statutory part of an Information, is purely historical, and is intended and calculated to prejudice the defendant in the minds of the jury."

A statement in the information that a preliminary hearing has been held is not a necessary part of an information but it is better practice to set out such fact in the information as a valid information cannot be filed until after a preliminary hearing or a waiver thereof has taken place. State v. Farris, 5 Idaho 666, 51 P. 772; State v. Arnold, 39 Idaho 589, 229 P. 748. By Instruction No. 2, the court told the jury that the information was merely an accusation and should not be considered as evidence or allowed to prejudice or influence the minds of the jurors against appellant. It was not error for the trial court to deny the motion to strike the questioned matter from the information.

654

■ By Specification of Error No. VI, appellant complains that the court erred in refusing to give his Requested Instructions Nos. 3 and 4 on the subject matter of evidence of good character on the ground that the court erroneously instructed the jury that evidence of good character could not be considered unless the good character was proven to the satisfaction of the jury, and failed to instruct the jury that character evidence may be considered by the jury as carrying the conviction of innocence. The trial court marked these requested instructions as covered. The court gave Instruction No. 16, reading as follows:

"The defendant has introduced evidence before you tending to show his good character. If, in the present case, the good character of the defendant is proven to your satisfaction, then such fact is to be kept in view by you in all your deliberations, and it is to be considered by you in connection with the other facts and circumstances in the case, and if after a consideration of all the evidence in the case, including that bearing upon the good character of the defendant, the jury entertains a reasonable doubt as to the defendant's guilt, then it is your duty to acquit him.

"In other words, evidence of good character, when considered with all the other evidence in the case, may be of itself sufficient to raise a reasonable doubt in your minds. But if the evidence convinces you, beyond a reasonable doubt, of the defendant's guilt, you must so find, notwithstanding his good character."

While not a model, this instruction when considered as a whole, sufficiently answers the objections of appellant and sufficiently covers the question of evidence of good character. State v. Dowell, 47 Idaho 457, 276 P. 39, 68 A.L.R. 1061.

■ Specification of Error No. VII is that the court erred in refusing to give Defendant's Requested Instruction No. 5 relative to the testimony of Robert Pierce wherein it is assumed that he was testifying under a promise of immunity or a reasonable hope that he would not be brought to trial for the crime or would be entitled to some leniency in consideration of his testimony. There was no evidence in the case requiring the giving of such an instruction by the trial court.

■ By Specification of Error No. VIII, appellant alleges that the court erred in refusing to give Defendant's Requested Instructions Nos. 6, 7, 8 and 9 and urges that the instructions given by the court do not cover the subject matter of the requested instructions. These requested instructions deal with the subject matter of circumstantial evidence. The instruction given by the court sufficiently covers the point in question and it was not error for

the court to refuse the requested instructions. State v. Rutten, 73 Idaho 25, 245 P.2d 778; State v. Farris, 48 Idaho 439, 282 P. 489.

Specification of Error No. IX is that the court erred in refusing to give a part of Defendant's Requested Instruction No. 14 on the question of the distinction between preparation for the crime, and attempt to commit the crime. The court properly refused this request under the evidence in this case. Here the assault with intent to commit robbery was carried out and as a result, two of the assailants were killed and the victim and one assailant were seriously injured. The court was not dealing with mere preparation for the commission of a crime but with the actual commission of such crime.

Specification of Error No. X is that the verdict is contrary to the evidence in the case. It is apparently the theory of appellant that after the trip to the home of Williams on the night of December 30th, appellant abandoned any further connection with the carrying out of the proposed robbery. However, his testimony is vague and not clear on this point and as to whether he ever communicated his alleged intention to abandon the proposed robbery to the others who were with him. Whether appellant ever abandoned the plan to rob Williams was a question for the jury. The court fully instructed the jury on the question of abandonment and upon the necessity of appellant communicating any alleged abandonment to his associates.

The jury found against appellant's contention and its verdict is sustained by ample, competent, substantial evidence in the record. Although there was some conflicting evidence, it is axiomatic that under these circumstances the verdict of the jury will not be disturbed on appeal.

The other contentions made by appellant claiming that the verdict is contrary to the evidence are not sufficiently meritorious as to require discussion.

The judgment of conviction is affirmed.

TAYLOR, SMITH and McQUADE, JJ., concur.

KEETON, C. J., concurs in the conclusion reached.