800 P.2d 640

**COWLES PUBLISHING COMPANY doing business as Spokesman–Review and Spokane Chronicle, Petitioner,**

v.

**The MAGISTRATE COURT OF THE FIRST JUDICIAL DISTRICT OF THE STATE of Idaho, COUNTY OF KOOTENAI, Hon. Peter Hutchinson, Presiding, Respondent.**

**STATE of Idaho, Plaintiff,**

v.

**Joshua FRAZIER, Defendant.**

No. 18629.

Supreme Court of Idaho.

Oct. 23, 1990.

Duane M. Swinton (argued), Wither-
spoon, Kelley, Davenport & Toole, P.S.,
Coeur d'Alene, for petitioner.

Jim Jones, Atty. Gen., Paige A. Parker, Sp. Deputy Atty. Gen. (argued), Boise, for respondent.

BOYLE, Justice.

In this original proceeding on a petition for a writ of mandamus seeking to compel a magistrate to open a preliminary hearing to the public, we are required to address the constitutionality of I.C. § 19–811 in light of *Press-Enter. Co. v. Superior Court of California*, 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) (hereinafter *Press-Enter. II*).

I.

*Facts and Procedure*

In the underlying criminal case defendant Joshua Frazier was charged with first degree murder, possession of a deadly weapon during the commission of a crime and conspiracy to commit aggravated battery. Frazier's attorney requested that the preliminary hearing be closed pursuant to I.C. § 19–811. The Kootenai County Prosecuting Attorney did not object nor concur in that request. Magistrate Hutchinson permitted petitioner Cowles Publishing to argue its motion seeking public access to the preliminary hearing but denied the motion based on a memorandum decision issued by First District Judge Richard G. Magnuson in the case of *State v. Isitt*, Kootenai County No. F–56680 (Feb. 16, 1990), which held that I.C. § 19–811 was constitutional and allowed the magistrate to close the preliminary hearing.

In the instant case Magistrate Hutchinson closed the preliminary hearing and excluded the public from reading minutes of the proceeding, listening to a clerk's tape recording of the proceeding, or reviewing any exhibits introduced during the proceedings. Following the preliminary hearing the conspiracy charge against Frazier was dismissed and he was bound over to the district court on the charges of first degree murder and possession of a deadly weapon during the commission of a crime.

A joint preliminary hearing was thereafter held for two alleged co-conspirators of Frazier which was open to the public and allegedly involved substantially the same evidence presented by the prosecutor in the Frazier preliminary hearing.

Cowles Publishing filed its petition for writ of mandamus with this Court requesting an order for a hearing before the magistrate court, to open the preliminary hearing to the public and to have access to the preliminary hearing record. We issued an alternative writ of mandate ordering the magistrate to conduct a hearing in accordance with *Press-Enter. II*, or in the alternative to show cause by filing an answer with the clerk of the Supreme Court. We further ordered that the preliminary hearing proceedings in the underlying Frazier case be stayed pending further order, or pending a hearing conducted in accordance with *Press-Enter. II*.

An attorney appointed by the attorney general filed an answer and response to the alternative writ and argued the case on behalf of the respondent magistrate. Neither the public defender's office, which is representing Frazier in the underlying criminal case, nor the prosecuting attorney of Kootenai County, presented any argument on the merits of the writ. The Kootenai County Prosecuting Attorney filed his affidavit stating that the evidence presented in Frazier's preliminary hearing was substantially the same as presented in the open preliminary hearing held for Frazier's alleged co-conspirators.

The primary issue presented in this case requires us to decide whether I.C. § 19–811 [1] is unconstitutional as an infringement of the free press provisions of the first amendment to the United States Constitution and the open court mandate of the Idaho Constitution, art. 1, § 18. We hold that I.C. § 19–811 does not violate

---

1. Idaho Code § 19–811 provides:
   **19–811. Exclusion of other persons.**—The magistrate must also, upon the request of the defendant, exclude from the examination every person except his clerk, the prosecutor and his counsel, the attorney general, the prosecuting attorney of the county, the defendant and his counsel, and the officer having the defendant in custody.

either provision and that it is not unconstitutional. However, for reasons stated herein we grant petitioner's request for a writ of mandate in part and order respondent magistrate Hutchinson to conduct a hearing as required by *Press–Enter. II.*

## II.

### *Standing and Mootness*

Respondent Hutchinson argues that because the preliminary hearing in the underlying criminal case has already been heard and substantially the same evidence was presented in a related preliminary hearing that was open to the public the issue presently before this Court in the instant case is moot. Although the preliminary hearing has been held, the exhibits and recorded proceedings of the preliminary hearing remain sealed. Cowles Publishing continues to express an interest in reviewing that record and has cited decisions of several Idaho magistrates refusing to close preliminary hearings in reliance on *Press–Enterprise II.* In the First Judicial District, however, magistrate judges have followed Judge Magnuson's memorandum decision and closed all preliminary hearings when a defendant has made a request for closure pursuant to I.C. § 19–811.

The United States Supreme Court has on several occasions addressed the right of the press to seek a qualified right of access to criminal proceedings pursuant to the first amendment. *See Press–Enter. v. Superior Court*, 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) (*Press–Enter. II*); *Press–Enter. v. Superior Court*, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) (*Press–Enter. I*); *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); and *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980). Likewise, the federal courts have recognized the right of the public to participate in proceedings to determine whether a criminal hearing will be closed. *See, e.g., Seattle Times Co. v. United States Dist. Court for the W. Dist. of Washington*, 845 F.2d 1513 (9th Cir.1988); *Newman v. Graddick*, 696 F.2d 796 (11th Cir.1983); *United States v. Chagra*, 701 F.2d 354 (5th Cir. 1983); *United States v. Gurney*, 558 F.2d 1202 (5th Cir.1977). Thus, we hold that Cowles Publishing clearly has standing to bring this action.

Where an issue is capable of repetition, yet evades review, the court's jurisdiction is not defeated. *Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982); *Gannett Co. v. DePasquale*, 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979). Since the issue of closure of a preliminary hearing pursuant to I.C. § 19–811 is obviously capable of repetition in future cases, and we desire a uniform application of law throughout the state, it is essential that we decide the issue presented in this case. In *Hammond v. Bingham*, 83 Idaho 314, 362 P.2d 1078 (1961), this Court held that constitutional questions involving matters of public concern and vital importance to the welfare of the state should be decided, even if not essential to the merits of the case. Accordingly, we will address and decide the issue presented to us in order to ensure uniform application of the law and provide guidance to our magistrate and district courts when confronting the issues presented in I.C. § 19–811.

## III.

### *Right of Public Access to Preliminary Hearings*

In *Press–Enter. Co. v. Superior Court of California*, 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) (*Press–Enter. II*), the United States Supreme Court reversed a California Supreme Court decision which held that there is no first amendment right of public or press access to preliminary hearings. In *Press–Enter. II*, the Supreme Court held in California there is a qualified first amendment right of access to preliminary hearings and that the hearings cannot be closed unless specific findings are made on the record that a substantial probability exists that the publicity will prejudice the defendant's right to a fair trial and reasonable alternatives to closure cannot adequately protect the defendant's fair trial

rights. The Court held that the public right of access is not necessarily inconsistent with the defendant's right to a fair trial, and observed, "[o]ne of the important means of assuring a fair trial is that the process be open to neutral observers. The right to an open public trial is a shared right of the accused and the public, the common concern being the assurance of fairness." *Id.* at 7, 106 S.Ct. at 2739.

The United States Supreme Court has applied and extended the openness rule to other criminal proceedings. In *Waller v. Georgia,* 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984), the Supreme Court noted that even in a suppression hearing the "explicit Sixth Amendment right of the accused is no less protective of a public trial than the implicit First Amendment right of the press and public." *Id.* at 46, 104 S.Ct. at 2215. It is important to note in our consideration of the issues presented in the instant case that "the First Amendment question cannot be resolved solely on the label we give the event, i.e., 'trial' or otherwise, particularly where the preliminary hearing functions much like a full-scale trial." *Press–Enter. II,* 478 U.S. at 7, 106 S.Ct. at 2739.

In *Press–Enter. II* two complementary considerations were presented to determine whether preliminary hearings should be open to the public. The first consideration concerned whether the place and process of preliminary hearings have historically been open to the press and general public. The second consideration is whether public access to preliminary hearings as they are conducted plays a particularly significant positive role in the actual functioning of the process. In addressing the first consideration the Supreme Court noted that although grand jury proceedings have typically been closed, preliminary hearings "conducted before neutral and detached magistrates have been open to the public," *Id.* at 10, 106 S.Ct. at 2741, and the near uniform practice of all state and federal courts has been to conduct preliminary hearings in open court. *Id.*

Idaho Code § 19–811 is based upon the *New York Field Code of Criminal Proce-*

*dure* which was published in 1850, *see Press Enter. II,* 478 U.S. at 11, 106 S.Ct. at 2741–42, and *Gannett Co. v. DePasquale,* 443 U.S. 368, 99 S.Ct. 2898, 61 L.Ed.2d 608 (1979), and allows for closure of a preliminary hearing at the request of the defendant. In *Press–Enter. II,* the Supreme Court cited *State v. McKenna,* 78 Idaho 647, 309 P.2d 206 (1957), as one of the several states which "have allowed preliminary hearings to be closed on the motion of the accused." 478 U.S. at 11, n. 4, 106 S.Ct. at 2742, n. 4. However, the Supreme Court quickly observed,

> But even in these States the proceedings are presumptively open to the public and are closed only for cause shown. Open preliminary hearings, therefore, have been accorded "the favorable judgment of experience."

478 U.S. at 11 n. 4, 106 S.Ct. at 2742 n. 4. The Supreme Court further pointed out in a footnote to the above quote in *Press–Enterprise II,* that even though these states have closure statutes based on the Field Code, many have found either a common law or a state constitutional right of the public to attend pretrial proceedings.

> Although Arizona, Iowa, Montana, North Dakota, Pennsylvania, and Utah have closure statutes based on the Field Code, see *Gannett,* 443 U.S., at 391, 99 S.Ct., at 2911, in each of these States the Supreme Court has found either a common-law or state constitutional right of the public to attend pretrial proceedings. *See Phoenix Newspapers, Inc. v. Superior Court,* 101 Ariz. 257, 418 P.2d 594 (1966); *Iowa Freedom of Information Council v. Wifvat, supra* [328 N.W.2d 920 (Iowa 1983)]; *Great Falls Tribune v. District Court, supra* [186 Mont. 433, 608 P.2d 116 (1980)]; *Minot Daily News v. Holum, supra,* [380 N.W.2d 347 (N.D. 1986)]; *Commonwealth v. Hayes,* 489 Pa. 419, 414 A.2d 318 (1980); *Kearns–Tribune Corp. v. Lewis, supra* [685 P.2d 515 (Utah 1984)].

*Id.* The clear presumption in nearly all states that preliminary hearings are generally open to the public absent the request of the defendant has also been the recognized and traditional practice in Idaho. In

*State v. McKenna,* 78 Idaho 647, 309 P.2d 206 (1957), the magistrate declined to close a preliminary hearing after the defendant had made the request. Although this Court held that it was not error to refuse the defendant's request, the ruling indicates that the policy and traditional practice in Idaho is to open preliminary hearings to the public. As further indicative of the tradition in Idaho, several Idaho magistrates have recently relied upon *Press–Enter. II* and have refused to close preliminary hearings.[2] Our tradition is one of presumed openness with preliminary hearings closed only for cause shown and we see no compelling reason to change that tradition.

The second consideration raised in *Press–Enter. II* concerns whether public access plays a significant positive role in the actual functioning of the process. The United States Supreme Court delineated some of the governmental processes that require secrecy and others which require openness.

> Although many governmental processes operate best under public scrutiny, it takes little imagination to recognize that there are some kinds of governmental operations that would be totally frustrated if conducted openly. A classic example is that "the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings." *Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 218, 99 S.Ct. 1667, 1672, 60 L.Ed.2d 156 (1979). Other proceedings plainly require public access. In *Press–Enterprise I,* we summarized the holdings of prior cases, noting that openness in criminal trials, including the selection of jurors, "enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to

public confidence in the system." [citation omitted].

478 U.S. at 8, 106 S.Ct. at 2740.

Although there are some differences in I.C. § 19–811 and the California statute scrutinized in *Press–Enter. II,* the actual preliminary hearing process involved in both states is similar. The Supreme Court observed that California preliminary hearings are sufficiently like a trial to justify public access.

> In California, to bring a felon to trial, the prosecutor has a choice of securing a grand jury indictment or a finding of probable cause following a preliminary hearing. Even when the accused has been indicted by a grand jury, however, he has an absolute right to an elaborate preliminary hearing before a neutral magistrate. *Hawkins v. Superior Court,* 22 Cal.3d 584, 150 Cal.Rptr. 435, 437, 586 P.2d 916, 918 (1978). The accused has the right to personally appear at the hearing, to be represented by counsel, to cross-examine hostile witnesses, to present exculpatory evidence, and to exclude illegally obtained evidence. Cal. Penal Code Ann. §§ 859–866 (West 1985), § 1538.5 (West Supp.1986). If the magistrate determines that probable cause exists, the accused is bound over for trial; such a finding leads to a guilty plea in the majority of cases.

478 U.S. at 12, 106 S.Ct. at 2742. The process in conducting preliminary hearings in Idaho is likewise sufficiently like a trial to generally justify public access.

The United States Supreme Court observed in *Press–Enter. II* that,

> Because of its extensive scope, the preliminary hearing is often the final and most important step in the criminal proceeding. [citations omitted].... [T]he

---

**2.** The following are cases in which the criminal defendant requested that the preliminary hearing be closed and the magistrate refused. *State of Idaho v. Ruby Comer,* Nez Perce County No. 60824, Order dated September 16, 1986 (pursuant to alternative writ of mandate from Idaho Supreme Court found I.C. § 19–811 unconstitutional); *State of Idaho v. Mary Suzanne Workman,* Jerome County No. 74752, decision and order dated August 21, 1986 (found that *Press–Enter.* applies to I.C. § 19–811 and defendant's

request for closure denied); *State of Idaho v. Paul Ezra Rhoades,* Bonneville County No. C–87–04–547, order denying motion to close preliminary hearing dated May 15, 1987 (finding that *Press–Enter. II* applies to govern closure of preliminary hearing and denial of defendant's request for closure); *State of Idaho v. Carl L. Stiffler, III,* Canyon County No. 87–CC01015, memorandum dated April 23, 1987 (found that *Press–Enter. II* applied and denied defendant's request for closure).

preliminary hearing in many cases provides the "sole occasion for public observation of the criminal justice system."

Similarly, the absence of a jury, long recognized as "an inestimable safeguard against the corrupt or overzealous prosecutor, and against the complaint, biased, or eccentric judge," [citation omitted] makes the importance of public access to a preliminary hearing even more significant. "People in an open society do not demand infallibility from their institutions, but it is difficult for them to accept what they are prohibited from observing." [citation omitted].

*Id.* 478 U.S. at 12, 106 S.Ct. at 2742.

The Supreme Court also determined in *Press–Enter. II* that there was a certain "therapeutic value" of openness.

> When the public is aware that the law is being enforced and the criminal justice system is functioning, an outlet is provided for these understandable reactions and emotions [provoked by certain violent crimes]. .... The value of openness lies in the fact that people not actually attending trials can have confidence that standards of fairness are being observed; the sure knowledge that *anyone* is free to attend give assurance that established procedures are being followed and that deviations will become known. Openness thus enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system.

*Id.* at 13, 106 S.Ct. at 2742, (citations omitted) (emphasis in original).

■ In Idaho all of the concerns and considerations deemed significant by the Supreme Court in *Press–Enter. II* are present when a preliminary hearing is held. The present case provides an excellent example of when the preliminary hearing was the final and sole occasion for the public to observe the criminal justice system. When the preliminary hearing was concluded the conspiracy count against Frazier was dismissed. Because the preliminary hearing was closed, the public was denied the opportunity to determine for itself whether the hearing was conducted fairly and jus-

tice properly administered. Furthermore, the community "therapeutic value" of openness may also have been frustrated by not knowing what transpired at the preliminary hearing, particularly on the discussed portion of the complaint.

Many criminal cases are dismissed by the magistrate following the preliminary hearing. A criminal complaint that is open to the public has been filed in all of these cases, unlike the absence of public filing when a grand jury convenes. Thus, when a preliminary hearing is closed the public is denied the opportunity to observe the criminal justice system at work and is denied the assurance that justice has been fairly and properly administered. We are of the opinion and hold that public access to preliminary hearings in Idaho plays a significant positive role in the functioning of the criminal justice system.

Since preliminary hearings are presumptively open and considering that openness of preliminary hearings plays a significant positive role in our society, we hold that in Idaho a qualified first amendment right of public access attaches to preliminary hearings.

## IV.

### *Constitutionality of Idaho Code § 19–811*

Having determined that a qualified first amendment right attaches to preliminary hearings, we now address and determine whether I.C. § 19–811 is constitutional.

■ Where a statute is capable of two interpretations, one of which would make it constitutional and the other unconstitutional, it is well established in this jurisdiction that the court should adopt that construction which upholds the validity of the act. *Idaho State AFL–CIO v. Leroy*, 110 Idaho 691, 718 P.2d 1129 (1986); *Leonardson v. Moon*, 92 Idaho 796, 451 P.2d 542 (1969); *City of Idaho Falls v. Pfost*, 53 Idaho 247, 23 P.2d 245 (1933); *Hindman v. Oregon Short Line R.R.*, 32 Idaho 133, 178 P. 837 (1919). It is a general rule of statutory construction that the courts should not nullify a statute or deprive a law of its poten-

cy unless such course is absolutely necessary. *Maguire v. Yanke,* 99 Idaho 829, 590 P.2d 85 (1978); *Magnuson v. Idaho State Tax Comm'n,* 97 Idaho 917, 556 P.2d 1197 (1976). We are of the opinion that the right of public access to preliminary hearing can co-exist with the mandate of I.C. § 19–811 which requires a magistrate to close a preliminary hearing upon the request of the defendant. We hold that the directive of I.C. § 19–811 to close preliminary hearings is not in conflict with the first amendment right of access to preliminary hearings so long as the requirements of *Press–Enter. II* are satisfied and complied with by the magistrate court.

■ In *Press–Enter. II,* 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986), the United States Supreme Court held that when a qualified first amendment right of access attaches to a preliminary hearing the proceedings cannot be closed unless specific findings are made on the record demonstrating that closure is essential to "preserve higher values and is narrowly tailored to serve that interest." *Id.* at 13, 106 S.Ct. at 2743. The Supreme Court held:

> If the interest asserted is the right of the accused to a fair trial, the preliminary hearing shall be closed only if specific findings are made demonstrating that, first, there is substantial probability that the defendant's right to a fair trial will be prejudiced by publicity that closure would prevent and, second, reasonable alternatives to closure cannot adequately protect the defendant's fair trial rights.

*Id.* at 14, 106 S.Ct. at 2743.

■ We therefore hold that once a defendant requests that a preliminary hearing be closed pursuant to I.C. § 19–811, the preliminary hearing may be closed if the magistrate makes the specific findings on the record as required by *Press–Enter. II* that there is, first, a substantial probability that the defendant's right to a fair trial will be prejudiced by publicity that closure would prevent, and second, that reasonable alternatives to closure cannot adequately protect the defendant's fair trial rights. *Press–Enter. II,* at 14, 106 S.Ct. at 2743; *Press–Enterprise I,* 464 U.S. 501, 510, 104

S.Ct. 819, 824, 78 L.Ed.2d 629 (1984) and *Richmond Newspapers, Inc. v. Virginia,* 448 U.S. 555, 581, 100 S.Ct. 2814, 2829–30, 65 L.Ed.2d 973 (1980); *Globe Newspaper Co. v. Superior Court,* 457 U.S. 596, 609, 102 S.Ct. 2613, 2621–22, 73 L.Ed.2d 248 (1982). The presumption remains that preliminary hearings in Idaho will remain open absent the defendant's request and an overriding interest in a fair trial. The right to an open public preliminary hearing and trial is a shared right of the accused and the public, with the common element and concern being the assurance of fairness. Only under unusually compelling circumstances should preliminary hearings be closed, and when closed the magistrate courts must comply with the requirements of *Press–Enter. II* and this opinion.

## V.

### Issuance of Writ

In the present case Cowles Publishing seeks a writ of mandate from this Court ordering the magistrate to allow it and other members of the public access to the preliminary hearing and in particular access to the transcript and record of the preliminary hearing in the underlying criminal case. Cowles also seeks an order directing the magistrate in this case to conduct hearings in accordance with the requirements of *Press–Enterprise II* before closing any preliminary hearings in future criminal cases.

A writ of mandate must be issued in all cases where there is not a plain, speedy and adequate remedy in the ordinary course of law. Idaho Code § 7–303. This Court has original jurisdiction to issue "writs of mandamus, ... and all writs necessary or proper to the complete exercise of its appellate jurisdiction." ID. CONST. art. 5, § 9; *Mead v. Arnell,* 117 Idaho 660, 791 P.2d 410 (1990).

■ A writ of mandamus will lie if the officer against whom the writ is brought has a clear legal duty to perform and if the desired act sought to be compelled is ministerial or executive in nature, and does not require an exercise of discretion. *Dalton*

*v. Idaho Dairy Prods. Comm'n,* 107 Idaho 6, 684 P.2d 983 (1984); *Mitchell v. Agents of State,* 105 Idaho 419, 670 P.2d 520 (1983). A writ of mandate will not lie to control discretionary acts of courts acting within their jurisdiction. *Felton v. Prather,* 95 Idaho 280, 506 P.2d 1353 (1973). We note that the preliminary hearing in the underlying criminal case has already been concluded. To turn back the clock of time is impossible and to order a new hearing so that the public could attend would prejudice the defendant. Consequently, the only remedy available to Cowles Publishing in this instant case is to have access to the preliminary hearing transcript which, in our opinion, should be afforded.

The qualified first amendment right of access to preliminary hearings or to the transcripts from those hearings is not an absolute right. *Press–Enter. Co. v. Superior Court of California,* 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986). The determination of whether a substantial probability exists that a defendant's right to a fair trial will be prejudiced is discretionary within the guidelines outlined in *Press–Enter. II.* Since the defendant in the instant case has requested closure, it is clear that Cowles Publishing is entitled to a *Press–Enterprise II* determination by the magistrate whether the defendant's right to a fair trial will be prejudiced by releasing the preliminary hearing transcript and exhibits.

Therefore, we grant petitioner's request for a writ of mandate and order Magistrate Hutchinson to make findings in accordance with *Press–Enter. II* and determine whether the release of the preliminary hearing transcript and other portions of the record will prejudice defendant Frazier's right to a fair trial.

When a request for closure is made by a defendant pursuant to I.C. § 19–811, magistrates must make the findings required by *Press–Enter. II* and determine whether a substantial probability exists that the defendant's right to a fair trial will be prejudiced and that reasonable alternatives to closure cannot adequately protect the defendant's right to a fair trial before closing a preliminary hearing.

Costs to petitioner. No fees awarded.

BAKES, C.J., and JOHNSON and McDEVITT, JJ., concur.

BISTLINE, Justice, dissenting.

The majority opinion errs in seeing *Press–Enterprise Co. v. Superior Court of Cal.,* 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) (*Press–Enterprise II*), as dispositive. *Press–Enterprise II* presented two considerations for deciding whether a first amendment right of access applies to a criminal proceeding. First, a court should consider "whether the place and process have historically been open to the press and general public." *Press–Enterprise II,* 478 U.S. at 8, 106 S.Ct. at 2740. Second, a court should consider "whether public access plays a significant positive role in the functioning of the particular process in question." *Press–Enterprise II,* 478 U.S. at 8, 106 S.Ct. at 2740. The High Court having concluded that public access does play a significant positive role in criminal trials, it logically added that public access may likewise play a positive role in preliminary hearing proceedings—PROVIDED that such are sufficiently like a criminal trial. *Press–Enterprise II,* 478 U.S. at 12–13, 106 S.Ct. at 2742. Today a majority of this Court, with little or no supporting authority or empirical data announce in a rather *ipse dixit* manner, that the *Press–Enterprise II* considerations are met as to preliminary hearings in Idaho. A more in-depth look at the question, however, suggests that *Enterprise II* does *not* neatly fit the Idaho locale.

Idaho's history since 1864, combined with its experiences regarding preliminary examinations and hearings, demonstrates a strong legislative belief which has ripened into over a century of long-standing tradition of closing hearings where the defendant has so requested. Public access has not played and does not play any significant positive role in preliminary hearings as they are conducted in Idaho. A preliminary hearing in Idaho bears little resemblance to a criminal trial. The only similar-

ity is that a judicial officer presides in each.[3] There is no jury at a preliminary hearing. There is no finding of guilt or innocence, and there is no semblance of finality. The prosecutor is wholly at liberty to take his case before another magistrate for successive preliminary hearings, or pursue an indictment through the grand jury process. *Stockwell v. State*, 98 Idaho 797, 573 P.2d 116 (1977). The *Press–Enterprise II* considerations are therefore not met, and there is no first amendment right of access to Idaho preliminary hearings.

In *State v. Isitt*, No. F–56680 (Kootenai Cty., Feb. 16, 1990), the district court, Honorable Richard G. Magnuson, conducted a thorough analysis of the *Press–Enterprise II* considerations as applied to Idaho preliminary hearings and reached the conclusions stated above. Judge Magnuson's study of the Idaho preliminary hearing is set out as follows:

In the Press–Enterprise II case, it was held California's preliminary hearings were sufficiently like a trial to justify such conclusion of openness.—

The Court will now address its understanding of the situation in Idaho. Are they the same or different from a trial?

The prosecutor can use either grand jury proceedings or a preliminary hearing before an impartial magistrate to initiate criminal proceedings. Constitution Article 1, Sec. 8.

As used in Idaho, a preliminary hearing is a proceeding to which a defendant is entitled, after having been arrested on a felony charge, before he is bound over or committed to answer such charge before the district court.

Preliminary hearings in Idaho are held before a magistrate, while almost all felony trials are heard by a jury.

The present Rule 5.1 Idaho Criminal Rules provides that a defendant, unless indicted by a grand jury, is entitled to a preliminary hearing when charged in a complaint with a felony. If he waives the

preliminary hearing, the magistrate shall forthwith file a written order in the district court holding the defendant to answer. If the defendant does not waive the preliminary hearing, the magistrate is required to fix a time for such hearing.

Subsection (b) provides that if the magistrate determines from the evidence that (1) a public offense has been committed, and (2) there is probable or sufficient cause to believe the defendant committed such offense, the magistrate shall forthwith hold him to answer in the district court. The finding of probable cause shall be based upon substantial evidence upon every material element of the offense charged; provided that hearsay (in certain specified forms) may be admitted to show the existence or nonexistence of certain specified matters, providing the magistrate determines the source of such hearsay evidence to be credible.

This rule further provides that the defendant is entitled to cross-examine witnesses produced against him and may introduce evidence in his own behalf. Motions to suppress must be made in a trial court (district court) as provided in Rule 12; provided, if at the preliminary hearing the evidence shows facts which would ultimately require the suppression of evidence sought to be used against the defendant, such evidence shall be excluded and not be considered by the magistrate in his determination of probable cause. A record of such proceedings *shall* be made by stenographic means or recording devices.

The State of Idaho is not required to show the defendant is guilty beyond a reasonable doubt at a preliminary hearing. *State v. Greensweig*, 102 Ida. 794 [641 P.2d 340 (1982)]. It need only prove a crime was committed and that there is probable cause to believe the accused committed it.

Where a defendant receives a fair trial and is adjudged guilty upon sufficient evidence to sustain the verdict, the judgment

---

**3.** In *State v. Elisondo*, 114 Idaho 412, 757 P.2d 675 (1988), Justice Shepard wrote for a four to one majority that: "The function of a preliminary hearing in Idaho is to determine if an offense has been committed, and further if there is probable cause to believe that the crime was committed by the accused." 114 Idaho at 414, 757 P.2d at 677.

*will not* be overturned for defects in proof at the preliminary hearing. *State v. Walker,* 109 Ida. 356 [707 P.2d 467] (App[.1985]); and *State v. Garza,* 109 Ida. 40 [704 P.2d 944] (App.[1985]).

The term 'probable cause,' as it is used regarding preliminary hearings was defined in *State v. Gibson,* 106 Ida. 54 [675 P.2d 33 (1983)], as the establishment of a belief by a reasonable person that the defendant had probably or likely participated in the commission of the offense charged. (See p. 57 [675 P.2d at 36]).

The State is not required to produce all of its evidence at a preliminary examination. If it produces enough to satisfy the committing magistrate that a crime has been committed and that there is reasonable or probable cause to believe the accused committed it, it is the duty of the magistrate to hold the accused for trial. The words 'reasonable or probable cause' means such evidence as would lead a reasonable person to believe the accused party has probably or likely committed the offense charged. *Martinez v. State,* 90 Ida. 229, at 232 [409 P.2d 426, at 429 (1965)].

The word 'trial' means the judicial hearing upon the issues in the cause, for the purpose of determining it, and cannot be applied to a preliminary examination before a magistrate to ascertain if the evidence is such that the accused ought to be put upon trial for the offense charged. *State v. Bergman,* [37 Minn. 407] 34 N.W. 737 (Minnesota (1887)). A 'trial' contemplates a final adjudication of whether a defendant is guilty in a criminal case.

> A preliminary examination before a committing magistrate is in no sense a trial. The purpose is to obtain the judgment of a magistrate to the effect that a crime has or has not been committed, and if committed that there is reasonable ground to believe that the person accused is guilty of committing the crime. It is not to be expected, nor is it required, that the same formality and precision must obtain in a preliminary examination as is required upon a trial.

*State v. Bilboa,* 33 Ida. 128, 132 [190 P. 248 (1920)].

As Justice Shepard stated in his dissenting opinion to *State v. Mee,* 102 Ida. 474 [632 P.2d 663 (1981)] (citing *State v. Lynn,* [*Linn*] 93 Ida. 430, 434 [462 P.2d 729, 733 (1969)]):

> [A] Preliminary hearing is in no sense a trial and therefore it does not require the same formality and precision observed at a trial.

In the case of *State v. Williams,* 103 Ida. 635 [651 P.2d 569] (App.[1982]), the Court of Appeals recognized that preliminary examinations are less formal than trials. They are not subject to the same precise application of rules of evidence. The finding of probable cause need only be based upon 'substantial' evidence. (Citing ICR 5.1(b)).

The State at preliminary examination is not required to show the defendant guilty beyond a reasonable doubt; it need only prove that a crime is committed and that there is probable cause to believe the accused committed it. *State v. Greensweig,* 102 Ida. 749, 794 [641 P.2d 340] (App.[1982]).

The only (judicially recognized) function of a preliminary hearing in Idaho is to determine if a public offense has been committed and if there is probable cause to believe the crime was committed by the accused. *State v. Rudell,* 97 Ida. 436 [546 P.2d 391 (1976)]. See also ICR 5.1.

> When we recall, as every lawyer who has any extended experience in criminal law practice may do, how very perfunctory these preliminary examinations are, not only on the part of the prosecution, but more frequently, of necessity, on the part of the defendant, the uncharitableness of the rule is apparent. It is always the policy of the prosecution, on preliminary examinations, to only carry its investigations to the extent necessary to secure the holding of the defendant; and it is seldom that the defendant feels warranted in going fully into his defense upon a preliminary examination before a court, where it is only required that it shall be made to appear that the offense named has been committed, "and that

there is sufficient cause to believe the defendant to have been guilty thereof."

*State v. Potter,* 6 Ida. 584, 589 [57 P. 431 (1899)].

The above comments taken from p. 589 [57 P. 431] of *State v. Potter,* 6 Ida. 584 [57 P. 431], were cited with approval in *State v. Mee,* 102 Ida. 474, 486 [632 P.2d 663, 675], and in *State v. Villarreal,* 94 Ida. 246, 248 [486 P.2d 257 (1971)].

There are *more similarities* between the functions of a preliminary hearing and a grand jury, than there are between a preliminary hearing and a trial.

A preliminary hearing can be waived by a defendant without any consent or waiver by the State of Idaho or the Court. (Sec. 19–804 I.C.). A defendant can waive a jury trial in felony criminal cases in Idaho, but *never* without the consent of all parties. (Art. 1, Sec. 7 Idaho Const.).

One may obtain a change of venue in Idaho for a trial (Rule 21 I.C.R.), but the statutes or rules do not provide for a change of venue for a preliminary hearing.

In the case of *State v. Edmonson,* 113 Ida. 230 [743 P.2d 459 (1987)], the decision states:

> The grand jury is an accusing body and not a trial court. Its functions are investigative and charging. The purpose of both grand jury proceedings and a preliminary hearing is to determine probable cause. Any advantage that a preliminary hearing affords a defendant is purely incidental to that purpose. The independent grand jury's function would be duplicated by requiring a subsequent preliminary hearing.

On p. 245 [743 P.2d 459] of this opinion, Justice Bistline (in his dissent) pointed out a skilled interrogation of witnesses at a preliminary hearing by an experienced lawyer can fashion a vital impeachment tool for use in cross-examination of the State's witnesses at the trial, or preserve testimony favorable to the accused of a witness who does not appear at trial. He recognized the important discovery function served by an adversarial preliminary hearing. Such hearing would also provide the defense with valuable information about the case against the accused, enhancing its ability to evaluate the desirability of entering a plea or to prepare for trial. He also pointed the defendant's counsel may immediately argue before the judge on such matters as the necessity for an early psychiatric examination or the setting of bail— Bistline cited the foregoing observations as being set forth in *Coleman v. Alabama,* 399 U.S. 1, 9–10 [90 S.Ct. 1999, 2003–04, 26 L.Ed.2d 387 (1970)]. Such functions were in addition to the more obvious function in obtaining a judicial determination of probable cause.

While Justice Bistline's comments were addressed to distinctions between proceedings by the grand jury or by the prosecutor's filing an information, they are nevertheless very helpful in defining the purposes of a preliminary hearing.

Some people, familiar with the practice of the law, might add other less recognized "purposes" for a preliminary hearing, such as a prosecutor's or defense counsel's desire to seek publicity for their cause. Also, either of them might well seek to put someone's 'feet to the fire,' in a courtroom atmosphere, be it the defendant or a witness for the State.

When this judge went to law school, a practical function of a preliminary hearing was for the defendant's pursuit of discovery. Its use for discovery has been greatly reduced by the Supreme Court's promulgation of discovery rules in criminal cases.

The nature and timing of preliminary hearings presents dangers that public access may prejudice fair-trial rights. As with other pretrial proceedings, the climate they may generate in advance of trial cannot *always* be nullified by relatively simple controls, such as sequestration and exclusions of witnesses, that are available to counter inflammatory publicity at the time of trial.

Because preliminary hearings must be scheduled, in accordance with the time specified by the rules, soon after arrest, it is frequently impossible for the defendant to make a showing that, in his case, preju-

dice is likely and closure is justified. The evidence required for such purposes may not be available at an early stage, when the community reaction and the media's attitude are not clear. Moreover, the defendant may have little knowledge before the hearing of the prosecution strategy in advance. That additionally clouds his ability to prove the value to him of closure.

The opening of a preliminary hearing over the defendant's demand for closure, puts him in a position of taking steps to protect his reputation. This action is beyond the scope of purpose for such preliminary hearing. He may forego the right to a preliminary hearing if he perceives intimidation by the media.

A defendant could logically argue that he is presumed innocent until found guilty by a jury of his peers, and ask how many times is he required to *publicly* defend himself after arrest.

As this court looks at it, the present state of the Idaho law does not keep secret the preliminary hearing proceedings, but delays the release of such information in certain cases where the defendant demands closure until the defendant is placed on trial or pleads guilty.

The prosecution seldom benefits from a preliminary hearing. It is primarily for the benefit of a defendant to test the State's case.

## A BRIEF HISTORY OF PRELIMINARY EXAMINATIONS AND PRELIMINARY HEARINGS IN IDAHO

The *Press–Enterprise II* case presented the considerations of experience and logic in determining preliminary hearings, as held in California, were open. Its statements recognized *history and experience* shape the functioning of government process. ([478 U.S. at p. 10, 106 S.Ct. at] p. 2741).

So, let us look to the Idaho history and experience on this subject.

On March 3, 1863, the Territory of Idaho was created by an act of congress. (Organic Act of the Territory of Idaho). This Act provided the courts, officers and procedures for the establishment of our government, but it did not provide any laws for the territory, either by adopting the laws of another state or territory, or otherwise.— The Territory of Idaho did not have any criminal laws, and their need soon became imperative.

In the Fall of 1863, a Lewiston packer by the name of Lloyd Magruder was returning from a trip to Virginia City, with an estimated 2,000 ounces of gold proceeds derived from his sale of the merchandise he packed into the Gold Fields. Unfortunately he and his four employees were murdered along the trail in central Idaho by four men who had joined Magruder's pack train.—The four murderers then departed overland to Lewiston and Wallula, and then by ship to The Dalles, and on to San Francisco.

During their travels, a Lewiston hotel keeper and friend of Magruder, by the name of Hill Beachy, began his private pursuit to bring the murderers to justice. He was not a law officer, but he talked the Territorial Governor into clothing him with authority to find and return the murderers. And he did so in San Francisco. Late in 1863, they were returned to Idaho Territorial Capital to face trial. All of Beachy's trek and the return of the four was done at Beachy's sole expense. The details of Hill Beachy's dedicated pursuit cannot be set out here, but they present one of the most magnificent stories in Idaho history.

\* \* \* \* \* \*

As a sidelight, the Territorial Assembly (legislature) of Idaho later appropriated the sum of $6,244 to reimburse Hill Beachy for the money he expended to pursue and detain the murderers.

\* \* \* \* \* \*

In any event, the prisoners were returned on December 7, 1863 to Idaho to face trial.

The First Sessions of the Idaho Legislature convened on December 7, 1863, and it passed its first laws on January 4, 1864. Among the first of such laws enacted, if not the first, was:

**COMMON LAW.** An act adopting the Common Law of England. Be it enacted

by the Legislative Assembly of the Territory of Idaho as follows:

**Section 1:** The common law of England so far as the same is not inconsistent with the provisions of the constitution and law of the United States, the organic act and laws of this territory, be the law of the land in this territory.

**Section 2:** This act to take effect and be in force from and after its approval by the governor.

**APPROVED January 4, 1864.**

This was one day before the first term of the new territorial court was scheduled to be held at Lewiston. The first trial held before that court was for Magruder's killers. One of them turned 'territorial evidence' and avoided trial, while the other three were sentenced to hang by Judge Samuel C. Parks. His order was carried out in Lewiston on March 4th, 1864.—The fourth killer had escaped the noose, but he was killed by another within a year.

The Court has digressed for awhile discussing the Magruder killings, but it is somewhat relevant. We are looking into our history regarding preliminary examinations and hearings. This colorful background discloses the beginning of our criminal laws and procedures.

*First,* we had no formal laws and then we adopted the Common Law of England. We must remember that Justice Stevens pointed out, on [478 U.S. at p. 23, 106 S.Ct. at] p. 2748, of the *Press–Enterprise II* decision that: 'Under English common law, the public had no right to attend pretrial proceedings.'

The next historical event regarding preliminary examinations was the enactment of Idaho Territory's Criminal Practice Act, on February 1st, 1864, shortly after the trial previously discussed. It also passed a 'Crimes and Punishment Act' on the same day.

Section 158 of the Criminal Practice Act provided closure of preliminary examinations at the defendant's request. Idaho's statute has never changed regarding closure to the present day. This provision is set forth now as Section 19–811 Idaho Code, which has remained substantially the same ever since 1864, except the word 'must' in Sec. 19–811 I.C. originally was 'shall.' The reference to the prosecuting attorney of the county originally referred to the district attorney.

It is interesting to see that Sec. 157 of the Criminal Practice Act originally provided that the witnesses for both parties at preliminary examination were not allowed to be present at the examination of the defendant, and while a witness was being examined, the magistrate 'may' exclude all witnesses who had not been examined. This section evolved into our modern day Sec. 19–810 I.C.—This section also discloses some legislative intent regarding the openness of such hearings.

Since 1864, the annotations to Sec. 19–811 disclose only one Idaho appellate decision on this subject. (*State v. McKenna,* 78 Ida. 647 [309 P.2d 206].) The *McKenna* decision held that the failure of the committing magistrate to exclude all unnecessary persons from the preliminary examination upon the request of the defendant was not a jurisdictional matter, but merely a procedural one:

Committing magistrates should abide by and enforce the provisions of this section (19–811 I.C.). However, a failure to do so is not necessarily prejudicial error. The enforcement of this section is not a jurisdictional matter but is a procedural one. (p. 653 [309 P.2d 206] of *McKenna* decision).

It was noted the record reflected a newspaper reporter and several others were present at the preliminary hearing, but there was not a showing of any prejudice resulting to the appellant from the magistrate's failure to grant his motion to exclude such persons from the courtroom.

The *McKenna* case was the one cited in a footnote on [478 U.S. at p. 11, 106 S.Ct. at] p. 2742 of the *Press–Enterprise II* case as previously mentioned on page 15 herein.

In addition to the Idaho Supreme Court's holding that 19–811 I.C. was a procedural matter in the *McKenna* case, our Supreme Court made Sec. 19–811 I.C. a *rule of procedure* for Idaho courts by its Order of March 19, 1951. Such order was later re-

scinded on October 24, 1974, but Sec. 19–811 still remained a statute within the Idaho Code.

The history of such proceedings cannot be presented without reflecting on Idaho's Constitutional Convention in 1889, which produced Article 1, Section 8 of the Idaho Constitution, which provides in pertinent part:

**PROSECUTIONS ONLY BY INDICTMENT OR INFORMATION**—No person. shall be held to answer for any felony or criminal offense of any grade, unless on presentment or indictment of a grand jury or on information of the public prosecutor, after a commitment by a magistrate ...

Up until that time, a defendant in a felony case could only be brought to *trial* before the Idaho courts upon an indictment from the grand jury. However, the defendant could be previously arrested and detained awaiting action by such grand jury. (See Sections 99–172 Idaho Criminal Practice Act). Such defendant was entitled to a preliminary examination before a magistrate pursuant to Sections 143–172 of the Criminal Practice Act.

The delegates at the Constitutional Convention advanced the idea of also prosecuting crimes upon an information filed by the public prosecutor.

J.W. Reid, a delegate to the Idaho Constitutional Convention from Nez Perce County, spoke against the part of Article 1, Sec. 8 dealing with filing informations by the prosecuting attorney. He urged that no one should be put to answer to a criminal charge except on a warrant duly issued upon an affidavit as to the charge, or the indictment of his neighbors, the grand jury:

I am opposed as to any one having it in his power to prefer informations and prosecutions against his fellow citizens for any crime. We have often heard that the courts are open. When you want to prosecute a man, go up, file your affidavit, meet him in open court, confront him with your witnesses. If he is held or bound over, then let his neighbors, *pro corpore comitatus,* as it used to be called in the ancient law, meet in grand jury assembled and there consider whether or not he should be indicted. After they have considered it, let him be put upon his trial, if they find a true bill; but I am opposed to lodging in the hands of a prosecutor this power to use their malice or prejudice or any other motive that might actuate them in the prosecution of their fellow citizens. (p. 260 of the convention debates).

It is apparent from the ensuing debate, that one of the motivations of the Constitutional delegates was to save money by allowing prosecutors to proceed upon informations, rather than requiring the necessity of impaneling a grand jury from time to time.

Ultimately their debate led to changing the proposal to provide the prosecutor could file an information *after a commitment by a magistrate* (preliminary hearing).

When the delegates adopted this section, they were well aware of the criminal laws, which had existed since 1864.

On page 266, Mr. Reid noted:

My short experience in the territory has been that with most magistrates it seems that the dictum of the district attorney is the end of the law.

Reid's opposition caused a debate over the question of prosecutions on informations, without indictment or presentment by a grand jury. It was William "Billy" Claggett, the President of the Convention, who offered an amendment inserting the words 'after a commitment by a magistrate' immediately following the word 'prosecutor.' This amendment was adopted. The [*State v.*] *McGreevy* [*McGreevey*] (17 Ida. 453 [105 P. 1047] (1909)) court recognized the only objection that was urged to this amendment and to Claggett's reasoning was the average justice of the peace or magistrate would simply follow the advice or direction of the prosecutor anyway. In any event, the Claggett amendment was adopted as proposed.

We have not been able to find a constitutional provision in any of the states in

the exact language or form of this section of our constitution ... (p. 458 [105 P. 1047] of the *McGreevy* [*McGreevey*] decision)

. . . .

It is interesting to note the *Plan for the Idaho Courts Fiscal Year 1990*, as set out by the Supreme Court and the Administrative Director of the Courts, presents as one of its goals the protection of confidentiality of personal, private information concerning individuals involved in court actions, while allowing free access to court information that is of public record. While the exact details of that goal were not presented in the Plan, the wording used indicates some recognition of the existence of private information concerning individuals involved in court actions.

*Isitt* at 23–38.

A point made by Judge Magnuson at the end of the section on the history of preliminary examinations and hearings in Idaho should perhaps be clarified. Judge Magnuson discussed Idaho's Constitutional Convention in order to point out that the pre-Convention closure of preliminary *examinations* was succeeded by the post-Convention closure of the newly instituted preliminary *hearings*. *Isitt* at 35–37. The tradition of closure of preliminary examinations and hearings at the defendant's request has thus continued uninterrupted from 1864 all the way up to the present.

Judge Magnuson's review of the preliminary examination and hearing refutes the conclusory statements of the majority, at 758, 800 P.2d at 645 and the United States Supreme Court, *Press–Enterprise II*, 478 U.S. 1, 11, 106 S.Ct. 2735, 2742, n. 4., that there has been a tradition of presumed openness of the preliminary hearing in Idaho. *Isitt* at 30–38. Those statements were based on a single case, *State v. McKenna*, 78 Idaho 647, 309 P.2d 206 (1957). *McKenna*, however, proves the opposite—a tradition of closure. *McKenna* stated that magistrates should enforce I.C. § 19–811 upon the request of the defendant. *McKenna* at 653, 309 P.2d at 209 ("Committing magistrates should abide by and enforce the provisions of this section.")

Judge Magnuson also refutes the majority's conclusory statement that the Idaho preliminary hearing is "sufficiently like a trial to generally justify public access." At 759, 800 P.2d at 646. The majority does not bother to discuss at all how a preliminary hearing is "sufficiently like a trial." In *Isitt*, set out above, Judge Magnuson catalogued the differences between a preliminary hearing and a trial, and effectively explained why these differences could not but lead to the conclusion that public access does not play a positive role in preliminary hearings, but rather a negative role. *Isitt* at 23–30.

The majority erred in applying the *Press–Enterprise II* considerations for determining whether a right of public access attaches to an Idaho preliminary hearing. After wrongly deciding that a right of access does attach, the majority goes on to alter the United States Supreme Court's test for when a magistrate can close a preliminary hearing, and thereby further erodes the defendant's right to a fair trial.

*Press–Enterprise II* held that when criminal defendants seek closure of a preliminary hearing to protect their right to a fair trial the hearing

shall be closed only if specific findings are made demonstrating that, first, there is substantial probability that the defendant's right to a fair trial will be prejudiced by publicity that closure would prevent and, second, reasonable alternatives to closure cannot adequately protect the defendant's fair trial rights.

478 U.S. at 14, 106 S.Ct. at 2743 (citations omitted).

The majority opinion ventures out and interprets the federal Constitution on its own by adding the requirement that "only under [un]usually compelling circumstances should preliminary hearings be closed." At 761, 800 P.2d at 648. The "unusually compelling circumstances" test goes beyond the *Press–Enterprise II* "substantial probability of prejudice" test and erodes the defendant's sixth amendment right to a fair trial. The United States Supreme Court endeavored to achieve a delicate balance between the first and sixth

amendments with its "substantial probability" test; the majority opinion destroys that balance by requiring "unusually compelling circumstances" for a preliminary hearing to be closed to the public.

A defendant's sixth amendment right to a fair trial may be seriously jeopardized by adverse publicity from a preliminary hearing. "Publicity concerning the proceedings at a pretrial hearing ... could influence public opinion against a defendant and inform potential jurors of inculpatory information wholly inadmissable at the actual trial." *Press–Enterprise II*, 478 U.S. at 14, 106 S.Ct. at 2743 (quoting *Gannett Co. v. DePasquale*, 443 U.S. 368, 378, 99 S.Ct. 2898, 2905, 61 L.Ed.2d 608 (1979)).

On the other side of the ledger, the public's first amendment right of access to a preliminary hearing is questionable. As Justice Stevens pointed out in his dissent in *Press–Enterprise II*, a first amendment claim to a right of access to a preliminary hearing is no stronger than a claim to a right of access to a grand jury proceeding. *Press–Enterprise II* at 26, 106 S.Ct. at 2749. The argument that the first amendment requires access to a preliminary hearing because the hearing is likely to be the final step in a criminal proceeding and the sole occasion for public scrutiny (since it often results in a guilty plea) applies with as much force to grand jury proceedings. Closure of grand juries denies an outlet for community rage just as much as closure of a preliminary hearing does. *Id.* Yet under *Press–Enterprise II* the first amendment requires public access to preliminary hearings but not to grand jury proceedings, even though they are functional equivalents. *Id.* at 26, 106 S.Ct. at 2749–50; *State v. Edmonson*, 113 Idaho 230, 241, 743 P.2d 459, 470 (1987) (Bistline, J., dissenting) (discusses equal protection problem created by difference in prosecution by indictment and prosecution by information).

*Press–Enterprise II* found that a state's preliminary hearings, provided they met the threshold considerations discussed above, should be open to the public barring a showing of a substantial probability of prejudice to the defendant because "one of

the important means of assuring a fair trial is that the process be open to neutral observers." *Press–Enterprise II*, 478 U.S. at 7, 106 S.Ct. at 2739. However, as Justice Stevens pointed out in his dissent, closure of a preliminary hearing could not possibly violate the defendant's right to a fair trial when it is the defendant who seeks closure. *Press–Enterprise II*, 478 U.S. at 17, 106 S.Ct. at 2745.

Because a defendant's sixth amendment right to a fair trial is at stake when a preliminary hearing is opened to the public, a magistrate must consider carefully whether there is a "substantial probability" that that right will be prejudiced by publicity that closure would prevent. The United States Supreme Court did not find that the first amendment requires "unusually compelling circumstances" for closure. In fact, such a standard may very well run afoul of the sixth amendment.